IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 7, 2003 Session

STATE OF TENNESSEE v. JERRY STEVEN COTHRAN AND LEE
THEODORE SMITH

Direct Appeal from the Circuit Court for Lauderdale County
No. 7177     Joseph H. Walker, Judge

No. W2002-00485-CCA-R3-CD - Filed February 14, 2003

A Lauderdale County grand jury indicted the defendants, Jerry Steven Cothran and Lee Theodore
Smith, on one count of attempt to manufacture a controlled substance, two counts of possession of
controlled substances, and one count of possession of drug paraphernalia. Cothran was also indicted
on three counts of unlawful possession of a firearm. The trial court granted the defendants' motion
to suppress evidence based upon an illegal search. On appeal, the state contends the trial court erred
in granting the defendants' motion to suppress. Upon review of the record and the applicable law,
we reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;
Remanded**

JOE G. RILEY, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN
E. GLENN, JJ., joined.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General;
Elizabeth T. Rice, District Attorney General; and Tracey Anne Brewer, Assistant District Attorney
General, for the appellant, State of Tennessee.

J. Thomas Caldwell, Ripley, Tennessee, for the appellee, Jerry Steven Cothran.

Gary F. Antrican, District Public Defender; and Julie K. Pillow, Assistant District Public Defender,
for the appellee, Lee Theodore Smith.

**OPINION**

On March 31, 2001, the defendants and co-defendant Alfred Smith were arrested and
charged with various drug-related offenses. In addition, Cothran was charged with three counts of
unlawful possession of a weapon, with Alfred Smith being charged in two of those three counts.

The defendants, but not co-defendant Alfred Smith,[1] filed a motion to suppress evidence found as a result of an illegal search. The trial court granted the defendants' motion, and the state appealed.

## I. SUPPRESSION HEARING

At the suppression hearing, Investigator John Thompson testified that on March 31, 2001, while he was off duty, he received a telephone call from the sheriff's department regarding a tip that someone was manufacturing methamphetamine at 4150 Asbury Glimp Road in Lauderdale County. Thompson stated he did not know who gave the tip or who resided at the address. Thompson testified he, the sheriff, and other deputies went to the address to conduct a "knock and talk." He stated he knocked on the door; heard a male voice say, "come on in;" and entered the residence. Upon entering the residence, Thompson immediately smelled the odor of burnt marijuana.

Thompson stated that upon entry, he was met by defendant Lee Smith, who in a "panic mode" put an object in his left front pocket. When he asked him what he had concealed, Smith replied it was "nothing." Thompson testified he patted Smith's pocket, felt a "long slender object," and removed it from his pocket. Thompson stated the object was a metal pipe, which he opined to be drug paraphernalia used to smoke drugs. He further stated the metal pipe had sharp edges and could be used as a weapon. He further observed that the pipe had traces of powder residue. Upon observing the metal pipe, he arrested Smith.

Thompson observed Alfred Smith and defendant Cothran sitting on separate couches. He testified he also saw a long, narrow strip of foil on an end table near Cothran and a long, burnt piece of foil on a stool at the end of a chair near both Cothran and Alfred Smith. Based on his experience and various courses he completed on illegal narcotics, Thompson opined these items were drug paraphernalia. He stated all three men appeared to be under the influence of drugs or alcohol, and Cothran was belligerent and "talked real crazy." The officer patted down each individual and found a .9mm derringer pistol in Cothran's pants pocket. He also observed a partially smoked marijuana cigarette in an ashtray on the couch where Cothran was seated and a clear bag of yellowish-tan powder beneath Cothran's feet.

When Thompson asked who owned the residence, Lee Smith informed him that Heather Kent was the owner. Thompson then contacted Kent and requested her presence. When Kent arrived, she consented to a search of the residence. The officers searched the residence but found no other drugs or paraphernalia.

Lee Smith and Cothran were taken to jail, while Thompson and Alfred Smith remained at the residence. Upon arriving at the jail, a deputy recovered a bag of marijuana and rolling papers upon searching Cothran.

---

[1] Alfred Smith did not contest the search and is not involved in this appeal.

A Ford "dually" owned by Alfred Smith was parked in the driveway of the residence. Thompson saw a gun wedged in the seat of the Ford "dually" and retrieved the gun, a Ruger .9mm. Although Alfred Smith denied ownership of the gun, he told Thompson there was another gun in the truck. He further stated that he and Cothran had ridden together in the truck earlier that day. The officer searched the truck and found the other gun in a storage compartment above the visor, a package of four lithium batteries, four cans of starting fluid, and a package containing white powder wrapped in black duct tape.

Thompson testified the officers submitted to the TBI the substance recovered from Cothran at the police station, the yellowish-tan powder found at the residence, the partially smoked cigarette found at the residence, and the white powder found in Alfred Smith's truck. According to the test results, the yellowish-tan powder was methamphetamine; the white powder was pseudoephedrine; and the remaining substances were marijuana. Thompson opined the officers found three of the necessary components of a methamphetamine laboratory, ether from the starting fluid, lithium, and pseudoephedrine.

At the suppression hearing, Heather Kent testified she was the owner of the residence. She stated that on March 31, 2001, she and Lee Smith went fishing, and Lee Smith's vehicle became stuck. Cothran and Alfred Smith came and helped them with the vehicle, and they all returned to Kent's home. Kent left, while the three men remained at her home. Kent stated that when she left, the men were not engaged in any criminal activity. She testified she received a telephone call from the police forty to forty-five minutes after she left the residence, and when she returned, she gave the officers consent to search her home.

## II. TRIAL COURT'S FINDINGS

We paraphrase the following findings of the trial court. Officer Thompson, accompanied by the sheriff and several deputies, went to the residence to conduct a "knock and talk." Upon knocking on the door, a male voice told him to enter. Upon entry, Officer Thompson smelled the odor of smoked marijuana and saw Lee Smith place something in his pocket. Officer Thompson conducted pat-down searches of Lee Smith, Jerry Cothran, and Albert Smith "for officer safety." The officer observed marijuana and drug paraphernalia and arrested Cothran after finding a pistol on his person.[2] The trial court further found that after being informed that the residence belonged to Heather Kent, Officer Thompson called her and requested that she return to her residence. When Kent arrived, she consented to the search of her home; however, the officers did not find anything in addition to the items they had already seized.

The trial court found that Heather Kent was the owner of the residence, and after Kent left the residence, the co-defendants remained with her consent. The trial court found that the

---

[2] The trial court also found that "[a]fter arriving at jail, a search of Lee Smith revealed a metal tube in his pocket which the state alleges is paraphernalia." However, the undisputed evidence presented at the suppression hearing preponderates against this finding of fact. The undisputed evidence at the suppression hearing indicated the metal tube was seized from Lee Smith's person during a frisk at the residence.

defendants had an expectation of privacy in Kent's residence and had standing to challenge the search and seizure relating to all items found in the residence.

The trial court further found that even though Officer Thompson received a telephone call from a dispatcher regarding a complaint of someone manufacturing methamphetamine, the officer did not know the dispatcher's source of the information. The trial court stated there was no evidence as to the identity of the informant or the basis of his or her knowledge. It found "there was nothing to corroborate the suspicion from the informant's tip until the officer entered the house and smelled marijuana."

The trial court also found that the officers did not have a reasonable suspicion or a lawful basis to be on the premises without a warrant. It stated that no adequate exigent circumstances existed to validate the entry. The trial court concluded the search and seizure of all items found in the residence and on the persons of those in the residence was illegal. The trial court further found the exclusionary rule barred the admission of any evidence obtained directly or derivatively from the illegal search, thus barring admission of the items found in Alfred Smith's truck. Further, it concluded the arrest of Cothran was illegal, thus barring admission of the drugs and paraphernalia seized from him at the jail.

### III. STANDARD OF REVIEW

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. State v. Ross, 49 S.W.3d 833, 839 (Tenn. 2001). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence and resolve any conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). However, this court is not bound by the trial court's conclusions of law. State v. Randolph, 74 S.W.3d 330, 333 (Tenn. 2002). The application of the law to the facts found by the trial court are questions of law that this court reviews *de novo*. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). The appellant has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. Braziel v. State, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

### IV. STANDING

On appeal, the state does not contend that the defendants lacked standing with respect to the marijuana cigarette, two pieces of foil, and the bag of yellowish-tan powder, all of which were found inside the residence but not on anyone's person. The extent to which non-overnight "social guests" have standing to challenge a search of another person's residence appears unresolved in light of Minnesota v. Carter, 525 U.S. 83, 90, 119 S. Ct. 469, 142 L. Ed. 2d 373 (1998) (An individual does not have an expectation of privacy in another's residence where the individual is present solely for commercial or business reasons; however, the majority decision coupled with the concurrences of

Justices Kennedy and Breyer and the dissent of Justice Ginsburg indicate a non-overnight social guest may have standing under certain circumstances.); *see, e.g.,* United States v. Rhiger, 315 F.3d 1283, __ (10th Cir. 2003) (interpreting Carter as authorizing standing for a social guest). This court's previous rulings that social guests or casual visitors do not have standing, *see* State v. Transou, 928 S.W.2d 949, 958 (Tenn. Crim. App. 1996); State v. Patterson, 966 S.W.2d 435, 441 n.5 (Tenn. Crim. App. 1997), do not appear absolute in light of Carter. Regardless, because the state has not raised this issue on appeal, we leave the issue for another day.

The state did contend at the suppression hearing and at oral argument that the defendants clearly lacked standing to contest the seizure of the items in Alfred Smith's truck. We agree with this contention. However, we conclude the defendants had standing to challenge the seizure of items from the persons of both defendants.

## A. Constitutional Background

The Fourth Amendment of the United States Constitution states the following:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Further, Article I, Section 7 of the Tennessee Constitution provides

> [t]hat the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

These rights are personal in nature, and "'they may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure.'" Ross, 49 S.W.3d at 840 (quoting Simmons v. United States, 390 U.S. 377, 389, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968)). In order to challenge the reasonableness of a search or seizure, the defendant must have a legitimate expectation of privacy in the place or thing to be searched. Ross, 49 S.W.3d at 840.

## B. The Vehicle

At the suppression hearing, Officer Thompson testified Alfred Smith was the owner of the vehicle from which the officer seized two pistols, four lithium batteries, four cans of starting fluid, and a duct-taped package of pseudoephedrine. The evidence established that Cothran had been a passenger in the vehicle earlier that day, and there was no testimony regarding Lee Smith's interest in the vehicle. There was no evidence that either defendant had an expectation of privacy in the vehicle, nor did either defendant claim an interest in the vehicle or the items seized. We conclude the defendants did not have a reasonable expectation of privacy in the vehicle and, therefore, lacked standing to challenge the search of Alfred Smith's truck and the seizure of the items found inside the truck. *See* Rakas v. Illinois, 439 U.S. 128, 148, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978); State v. Roberge, 642 S.W.2d 716, 718 (Tenn. 1982).

## C. Search of the Person

One does have a reasonable expectation of privacy on his or her person. *See* Transou, 928 S.W.2d at 958. As a result, Lee Smith has standing to challenge the search of his person and the seizure of the metal pipe; Cothran has standing to challenge the search of his person and the seizure of the pistol, as well as the marijuana and rolling papers found on his person at the jail.

## V. THE RESIDENTIAL ENTRY

The trial court found the search and seizure of items in the residence was illegal because Officer Thompson lacked "reasonable suspicion" to justify his presence on the premises. The state contends the trial court erred in its finding; we agree.

Officer Thompson testified that upon receiving a complaint of methamphetamine being manufactured at the residence, he responded to the address in order to conduct a "knock and talk." Although our state's courts have not yet addressed the "knock and talk" procedure, federal courts and courts of other states have recognized it as an accepted investigative tactic. *See* United States v. Jones, 239 F.3d 716, 720 (5th Cir.), *cert. denied*, 534 U.S. 861, 122 S. Ct. 142, 151 L. Ed. 2d 94 (2001); Keenom v. Arkansas, 80 S.W.3d 743, 746 (Ark. 2002); State v. Smith, 488 S.E.2d 210, 214 (N.C. 1997). Generally, courts have upheld the "knock and talk" procedure as a consensual encounter, as well as a means to request consent to search a residence. Latta v. State, 88 S.W.3d 833, 838 (Ark. 2002). In examining the "knock and talk" procedure, the courts have reasoned:

> Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly and peaceably, at high noon, to walk up the steps and knock on the front door of any man's "castle" with the honest intent of asking questions of the occupant thereof - whether the questioner be a pollster, a salesman, or an officer of the law.

United States v. Cormier, 220 F.3d 1103, 1109 (9th Cir. 2000), *cert. denied*, 531 U.S. 1174, 121 S. Ct. 1146, 148 L. Ed. 2d 1009 (2001) (quoting Davis v. United States, 327 F.2d 301, 303 (9th Cir.

1964)).  Neither probable cause nor reasonable suspicion is needed to conduct a "knock and talk."  Cormier, 220 F.3d at 1109.

We agree with these holdings and recognize the validity of the "knock and talk" procedure.  Officer Thompson was engaged in a consensual encounter, which requires no basis for suspecting a crime is being committed.[3]  *See* State v. Daniel, 12 S.W.3d 420, 425 (Tenn. 2000).  We further recognize that "[i]t is not improper for a police officer to call at a particular house and seek admission for the purpose of investigating a complaint or conducting other official business."  1 LaFave, **Search and Seizure** § 2.3(b) (3d ed. 1996).

Furthermore, our courts have held that a person does not have an expectation of privacy "in the area in the front of his residence which leads from the public way to the front door."  State v. Baker, 625 S.W.2d 724, 727 (Tenn. Crim. App. 1981), *overruled on other grounds*, State v. Holt, 691 S.W.2d 520, 522 (Tenn. 1984).  A sidewalk or pathway leading from a public street to the front door of a residence represents an "implied invitation" to the public to use the pathway in pursuing legitimate business or social interests with those inside the residence.  State v. Harris, 919 S.W.2d 619, 623 (Tenn. Crim. App. 1995).  Police officers, who are conducting official police business, are considered members of the general public.  *Id.* at 623-24.

In addition, a warrant is not required when voluntary and knowing consent to enter a residence is given.  *See* United States v. Matlock, 415 U.S. 164, 169-70, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974); State v. Wilson, 990 S.W.2d 726, 730 (Tenn. Crim. App. 1998).  It is not necessary for the officer to inform the person of the person's right to refuse consent.  United States v. Drayton, 536 U.S. 194, ___, 122 S. Ct. 2105, 153 L. Ed. 2d 242 (2002).  Although hindsight may well reveal to the consenting party his or her lack of wisdom in granting consent to enter, there is no requirement that consent be cloaked with wisdom.

Officer Thompson testified that when he knocked on the door of the residence, he heard a male voice say, "Come on in," and he then entered the residence.  The officer stated he did not know who the owner was or who would be inside the residence when he entered.  The evidence reflects that the officer was invited to enter the residence, and there is no proof that the invitation was a result of duress or coercion.  Therefore, as to the defendants, we conclude the officer had valid consent to enter the residence.[4]

We conclude the trial court erred in finding that the state was required to show reasonable suspicion in order to justify the officer's presence at the residence.  Furthermore, the evidence indicates that the initial encounter was consensual.  Officer Thompson did not demand under the

---

[3] A typical "knock and talk" is conducted when the officer intends to seek consent to search.  Here, there is nothing in the record to indicate this was the officer's intent.  The evidence indicates the officer intended to speak to the unknown occupant or occupants regarding the complaint.  Regardless, this is not determinative of the issue before the court.

[4] We need not determine whether the defendants could validly consent to entry as it would relate to the rights of the homeowner.

badge of authority that the defendants open the door. In addition, there is no evidence that the officer was unreasonably persistent in gaining access to the residence. Rather, he was told to "come on in" when he knocked on the door. Therefore, the officer legally entered the premises.

The defendants contend Officer Thompson was required to announce his identity upon knocking. However, we are unable to find any authority which requires a police officer engaged in a consensual encounter to identify himself of herself upon knocking and being authorized to enter a residence. We decline to engraft such a requirement in these situations. Accordingly, we conclude Officer Thompson was lawfully in the residence when he made his observations.

## VI.  LEE SMITH-SEARCH OF THE PERSON

Officer Thompson testified that upon entering the residence, he immediately smelled the odor of burnt marijuana and saw Lee Smith put something in his left front pocket in a "panic mode." When the officer asked Lee what he concealed, Lee denied putting anything in his pocket. Officer Thompson then frisked Lee, found the metal pipe in his left front pocket, and arrested him.[5]

A law enforcement officer may perform a protective frisk of a suspect where the officer has reasonable suspicion that the suspect is armed. Terry v. Ohio, 392 U.S. 1, 27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); State v. Bridges, 963 S.W.2d 487, 492 (Tenn. 1997). Reasonable suspicion is suspicion supported by specific and articulable facts. Bridges, 963 S.W.2d at 492. These facts may be derived from information obtained from other law enforcement personnel or citizens, known patterns of criminal behavior, or the officer's experience. State v. Winn, 974 S.W.2d 700, 703 (Tenn. Crim. App. 1998).

Courts have upheld frisks as reasonable when the suspected crime typically involves a weapon. *See id.* Furthermore, even if the suspected crime does not involve a weapon, "other circumstances" may justify a Terry frisk. *Id.* at 703-04. Such circumstances include:

> [A] characteristic bulge in the suspect's clothing; observation of an object in the pocket which might be a weapon; an otherwise inexplicable sudden movement toward a pocket or other place where a weapon could be concealed; an otherwise inexplicable failure to remove a hand from a pocket; backing away by the suspect under circumstances suggesting he was moving back to give himself time and space to draw a weapon; awareness that the suspect had previously been engaged in serious criminal conduct; awareness that the suspect had previously been armed; [and] discovery of a weapon in the suspect's possession. . . .

*Id.* at 704 (citations omitted).

Upon entering the residence, Officer Thompson smelled marijuana and saw Lee Smith in a "panic mode" put something in his pocket. When the officer questioned him, Lee denied placing anything in his pocket, and, according to the officer's testimony, Lee appeared "real nervous" and

---

[5]We note that the count on the indictment charging Lee Smith with unlawful possession of drug paraphernalia lists only the "foil." Nevertheless, this has no bearing on the legality of the frisk and seizure of the metal pipe.

"real wired." The trial court found the pat-down was for "officer safety," and the record does not preponderate against this finding. Based on the totality of the circumstances, Officer Thompson had reasonable suspicion that Lee possessed a weapon and, therefore, was justified in frisking him for safety purposes.[6] *See id.* (noting that reasonable suspicion to justify a Terry search may be based upon "an otherwise inexplicable sudden movement toward a pocket or other place where a weapon could be concealed"). Further, the seizure of the metal pipe was justified based upon the officer's testimony that it could be used as a weapon.

Regardless, there is another basis for seizure of the metal pipe. If, during a valid Terry frisk, a law enforcement officer detects contraband through the sense of touch, the officer may seize the contraband. Minnesota v. Dickerson, 508 U.S. 366, 375, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993); Bridges, 963 S.W.2d at 493. Seizure of contraband under the "plain feel" doctrine is permissible if:

> 1) a prior valid reason exists for the intrusion, i.e., the patdown must be permissible under Terry; 2) the contraband is detected while the Terry search for weapons legitimately is still in progress; and 3) the incriminating nature of the object perceived by the officer's sense of touch is immediately apparent giving the officer probable cause to believe the object is contraband prior to its seizure.

Bridges, 963 S.W.2d at 494 (citations omitted).

Probable cause that an item is contraband exists when the officer's knowledge of the facts and circumstances sufficiently warrant a person of reasonable caution to believe the object may be contraband. Texas v. Brown, 460 U.S. 730, 742, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983); Bridges, 963 S.W.2d at 494. Courts must consider the totality of the circumstances in determining whether probable cause exists; such circumstances include the officer's testimony and his or her actual knowledge based upon experience. Bridges, 963 S.W.2d at 494. The officer's subjective belief that the item is contraband is insufficient unless his belief is objectively reasonable considering the facts and circumstances known at the time of the search. *Id.* at 494-95. Although the officer's testimony is a factor in determining whether a seizure is legal under the "plain feel" doctrine, it is not dispositive to the court's decision. *Id.* at 495.

As discussed above, Officer Thompson frisked Lee Smith for safety purposes and found the metal pipe during the course of the frisk. The officer testified that he had smelled burnt marijuana and while frisking Lee, he felt a "long slender object," which, based on his experience, he believed to be a pipe used to consume controlled substances. Officer Thompson stated his experience included training in the manufacture and delivery of illegal narcotics. We conclude that based on the totality of the circumstances at the time of the frisk, Officer Thompson had probable cause to believe the object he felt was contraband. Therefore, under the "plain feel" doctrine, as well as for the officer's safety, Officer Thompson legally seized the metal pipe.

---

[6] The officer may have also had the right to arrest Lee based upon the odor of burnt marijuana and search his person incident to a lawful arrest; however, we need not address this basis for the search.

## VII.  ITEMS SEIZED INSIDE THE RESIDENCE

Officer Thompson testified that while inside the residence, he observed a partially smoked marijuana cigarette in an ashtray on the couch where Cothran was seated; a long, narrow strip of foil on an end table near Cothran; a long, burnt piece of foil on a stool near both Cothran and Alfred Smith; and a clear bag containing yellowish-tan powder on the floor beneath Cothran's feet.  The state contends these items were properly seized under the plain view doctrine.  We agree.

### A.  Plain View Doctrine

This court has stated that the plain view doctrine applies when (1) the items seized were in plain view; (2) the viewer had the right to be in the position to view the items; (3) the items seized were inadvertently discovered; and (4) the incriminating nature of the items was immediately apparent.  State v. Hawkins, 969 S.W.2d 936, 938 (Tenn. Crim. App. 1997) (citations omitted).  The Hawkins court, in setting forth these four requirements, cited cases decided prior to 1990.  *See id.* However, the United States Supreme Court has dispensed with the inadvertent discovery requirement under the United States Constitution.   Horton v. California, 496 U.S. 128, 137-38, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990). We reach the same conclusion under the Tennessee Constitution.  *See generally,* State v. Coulter, 67 S.W.3d 3, 43 (Tenn. 2001) (not mentioning inadvertent discovery as a requirement but not discussing the Tennessee Constitution.)

The evidence indicates the items Officer Thompson observed were in his plain view.  He entered into the residence with consent; he had the right to be in the position to view the items.  The evidence further reflects that the officer's discovery of the items was inadvertent, although this is no longer a requirement of the plain view doctrine.  Finally, Officer Thompson testified that based on his experience and his training in illegal narcotics, he recognized the items as controlled substances and drug paraphernalia and seized them.  We conclude the officer properly seized the items he observed in the residence pursuant to the plain view doctrine.

### B.  Inevitable Discovery

Even if these items were improperly seized under the plain view doctrine, the items seized from the residence would have been inevitably discovered.  Under the inevitable discovery doctrine, illegally obtained evidence is admissible if the evidence would have otherwise been discovered by lawful means.  Nix v. Williams, 467 U.S. 431, 444, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984); State v. Ensley, 956 S.W.2d 502, 511 (Tenn. Crim. App. 1996).  Proof of inevitable discovery "involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment."  Nix, 467 U.S. at 444 n.5.

Officer Thompson entered the residence by consent, smelled burnt marijuana, and properly arrested Lee Smith for possession of drug paraphernalia.  At that point, Cothran and Alfred Smith would not have had the opportunity to dispose of the contraband found in the residence even if Officer Thompson did not observe the contraband at that time.  Heather Kent, the home owner, arrived at the residence and gave Officer Thompson consent to search the residence.  Even if the

initial seizure of the items was improper under the plain view doctrine, the items would have been inevitably discovered and properly seized during the officer's consensual search of the residence. Therefore, we conclude the trial court erred in suppressing the items found in the residence.

## VIII.  JERRY COTHRAN-SEARCH OF THE PERSON

While at the residence, Officer Thompson frisked Cothran and found a .9mm derringer pistol in his pants pocket.  After Cothran was transported to the police station, a deputy again searched him and recovered a bag of marijuana and rolling papers from his person.  We will examine the legality of the search and the seizure of these items.

### A.  Search at the Residence

Officer Thompson testified that after he arrested Lee Smith, he observed two pieces of foil, which he believed to be drug paraphernalia, near the couch where Cothran was sitting.  He frisked Cothran and Alfred Smith, and he found a .9mm derringer pistol in Cothran's pants pocket.  Officer Thompson also observed a marijuana cigarette in an ashtray on the couch where Cothran had been sitting and the clear bag containing yellowish-tan powder beneath Cothran's feet.

An exception to the warrant requirement is a contemporaneous police search following a lawful arrest.  State v. Crutcher, 989 S.W.2d 295, 300 (Tenn. 1999).  When an officer makes a lawful custodial arrest, the officer may conduct a search incident to the arrest of the person arrested and the immediate surrounding area. *Id.*  A search may precede a formal arrest if the police officer had probable cause to arrest at the time of the search, and the items seized as a result of the search were not necessary to support probable cause to arrest.  Rawlings v. Kentucky, 448 U.S. 98, 111, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980).

Officer Thompson testified he smelled burnt marijuana immediately upon entering the residence and observed two pieces of foil, which he identified as drug paraphernalia, near the area where Cothran was sitting.  The officer, therefore, had probable cause to arrest Cothran.  The officer searched Cothran's person and found the pistol.  Because the search occurred contemporaneous to the arrest, the search of Cothran's person was a valid search incident to a lawful arrest, and the officer lawfully seized the pistol.

### B.  Search at the Police Station

When Cothran arrived at the police station, a deputy again searched him and found a bag of marijuana and rolling papers on his person.  These items were lawfully seized pursuant to a valid inventory search at the police station. *See* Crutcher, 989 S.W.2d at 301 (noting that law enforcement authority in cases of incarceration "extends to performing a detailed 'inventory search' of all personal effects in the arrestee's possession") (citing Illinois v. Lafayette, 462 U.S. 640, 648, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983)).  We conclude the trial court erred in suppressing the items seized during the two searches of Cothran's person.

# IX. CONCLUSION

In summary, we conclude the defendants did not have standing to challenge the seizure of the items found in Alfred Smith's vehicle. However, each defendant had standing to challenge the search of his person and seizure of items found on his person. We further conclude the officer lawfully approached the residence to conduct a "knock and talk" and had valid consent to enter the residence. The officer conducted a valid <u>Terry</u> frisk on Lee Smith and lawfully seized the metal pipe found on his person. Furthermore, the officer lawfully seized the items in the residence under the plain view and inevitable discovery doctrines. The officer also conducted a valid search incident to a lawful arrest of Jerry Cothran and lawfully seized the pistol found on his person. A deputy then conducted a valid inventory search of Cothran at the police station and lawfully seized the contraband found on his person. We conclude the trial court erred in granting the defendant's motion to suppress. Therefore, we reverse the judgment of the trial court and remand for further proceedings.

_____
JOE G. RILEY, JUDGE