IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 1, 2006

## STATE OF TENNESSEE v. SCOTTY WAYNE HENRY

**Direct Appeal from the Circuit Court for Tipton County**
**No. 5124    Joseph H. Walker, III, Judge**

─────────────────

**No. W2005-02890-CCA-R3-CD  - Filed April 11, 2007**

─────────────────

The Defendant, Scotty Wayne Henry, pled guilty to one count of promoting the manufacture of methamphetamine and one count of felony reckless endangerment.  Pursuant to Tennessee Rule of Criminal Procedure 37, the Defendant reserved as a certified question of law the issue of whether the search and seizure of evidence that led to his indictment and guilty plea were unconstitutional. We conclude that the search and seizure were constitutional, and the judgments of the trial court are therefore affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and DAVID G. HAYES, J., joined.

J. Barney Witherington, IV, Covington, Tennessee, for the appellant, Scotty Wayne Henry.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Elizabeth Rice, District Attorney General; Colin Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

OPINION
I.  Facts

        This case arises from a search of the Defendant's residence during which officers found evidence of methamphetamine production.  Prior to entering a guilty plea, the Defendant filed a motion to suppress evidence found during the search.  At the suppression hearing, Officer Daniel Moody testified the police received a tip through the "meth lab hotline" about a possible methamphetamine production lab at a certain residence.  He and Officer Mike Rose gathered information about the person allegedly living at the residence and drove there to perform a "knock and talk."

Officer Moody stated he and Officer Rose did not see any "No Trespassing" signs, and they simply walked to the front door of the residence and knocked. The officers were dressed in plain clothes with their badges around their necks. A man, later identified as Watson, answered the door that Officer Moody described as a door he could not see through. Watson opened the door "all the way," and Officer Moody stated he immediately noticed a "real[ly] strong chemical odor."

The officers identified themselves and asked to speak with Scotty Henry, the Defendant and alleged owner of the residence. Watson responded, "Sure. Come on in." Officer Moody then stated that he and Officer Rose glanced around without going into the residence and saw an individual on the floor in the bedroom immediately to the right of the open front door. The individual had chemical components and materials lying around him.

Officer Moody stated he had been to approximately twelve to fourteen "meth labs," and he knew these were the components used to produce methamphetamine. The officer also immediately recognized the odors associated with the production of methamphetamine. Officer Moody testified that Officer Rose stated, "We have a lab," which Officer Moody already knew from what he had seen.

Officer Moody and Officer Rose entered the residence and secured Watson and the individual on the floor in the bedroom, who was later identified as Wilson. Shortly thereafter, the officers moved to the back of the residence and detained Zanes and the Defendant. The officers also found three children in the residence.

On cross-examination, Officer Moody testified he had the exact address of the residence they sought, but they first went across the street to the Defendant's mother's house because they could not find street numbers on the houses. Officer Moody testified they were going to the Defendant's residence "to see if there was any evidence of a meth lab," and they were expecting to find one. There was no evidence to indicate the occupants of the residence knew they were coming. The officers went to the residence about an hour after they received the tip.[1] The defense offered into evidence photographs of the residence and trees in front, upon which were posted signs that read, "No Trespassing" and "Keep Out - Private Property." Officer Moody testified the house was fairly depicted in the photographs, but the land looked "older."

Defense Counsel then attempted to establish that there was no line of sight from the front door on the front porch to the area where Officer Moody claimed the production materials were sitting. However, Officer Moody maintained that he could see the materials from his vantage point on the front porch. The officer then agreed that one could not flush a jar down the toilet, but he testified he did not know what the people in the house were capable of destroying in a short amount of time.

---

[1]Upon an attempted line of questioning as to the opportunity of the officers to obtain a search warrant, there was an objection made based on relevancy. The trial court sustained the objection saying there was no basis for a search warrant.

Officer Rose, a Drug Task Force Officer, whose experience included "hundreds" of methamphetamine lab raids, testified he had the opportunity to search the area and found evidence of two different types of methamphetamine "cooks." Officer Rose testified he also smelled the odors about which Officer Moody testified, and they were consistent with the production of methamphetamine.

In addressing the search and seizure, Officer Rose stated that, as soon as the door was opened, they asked for the Defendant, Watson told them to come in, and then he turned around and said, "Scotty, somebody is here to see you." Officer Rose then described the situation, "[J]ust as we started to step in the door we were just overcome by fumes. And I immediately then looked to the right, and I could observe some Sudafed and liquid in a container, and I immediately told Agent Moody to get everyone [out]." The officer admitted he was unsure whether he made the statement before or after he crossed the threshold into the residence.

On cross-examination, Officer Rose further clarified what happened: He and Officer Moody swept through the house clearing out individuals, and, although he could clearly see the materials used for a methamphetamine lab, they entered the premises to remove everyone. Officer Rose stated he knew he would enter the residence once he smelled the evidence of the lab, and there were other officers on the way just in case a methamphetamine lab was discovered. Addressing what happened after the officers arrested the four adults, Officer Rose testified that the officers requested and were given consent by the Defendant to search the residence. The Defendant stated, "I'm glad you're here," and he was cooperative.

Upon being shown the photographs of the residence and trees, Officer Rose stated that, although the pictures fairly depicted the residence, the signs were not posted at the time of the arrest. He had toured the entire area and found no signs posted stating "No Trespassing." On redirect, Officer Rose testified the property was condemned by HAZMAT, and the property owner put the "No Trespassing" signs up after they came.

Crystal Zanes, who was at the residence at the time of the arrests, testified that it was impossible to see into the bedroom from the front porch. One would have to be sticking his or her head into the trailer to see into the bedroom. Zanes also stated she was at the back of the trailer when the officers entered. Additionally, she said there were other officers who almost immediately came in through the backdoor.

Based upon the above testimony, the trial court determined "that the procedure used for the knock and talk . . . was acceptable; that once the door was opened the officer testified he could clearly smell a strong chemical odor associated with the manufacture of meth; that gave him a basis for further inquiry." Additionally, the trial court found that the officer "was invited into the house, and upon looking in could see the chemicals and pill soak associated with a meth lab after that." The court found that the officers had witnessed a crime being committed, and they had the right to arrest the Defendant and seize the items. The trial court further found that the Defendant consented to the search of his residence and stated he was glad the police were there. Based on the above findings,

the trial court denied the motion to suppress.

The Defendant then pled guilty to the charges but reserved as a certified question of law, "whether officers had probable cause to perform warrantless search of defendant's home (see written findings 12-1-05). If seized evidence is suppressed, would be dispositive of this charge." This statement of the certified question was written by the trial judge on the promoting the manufacture of methamphetamine judgment. No such comment was written on the felony reckless endangerment judgment. However, the order reserving the certified question of law stated, "It appears unto the Court that the parties expressly agree to the reservation of a certified question of law in this case. It further appears that the parties are in agreement that this certified question of law is dispositive of the case."

## II. Analysis
### A. Certified Question of Law

Because this appeal comes before us as a certified question of law, pursuant to Rule 37(b) of the Tennessee Rules of Criminal Procedure, we must first determine whether the question presented is dispositive. Tennessee Rule of Criminal Procedure 37(b) provides, in pertinent part, that:

> An appeal lies from any order or judgment in a criminal proceeding where the law provides for such appeal, and from any judgment of conviction . . . [u]pon a plea of guilty . . . [if] . . . [t]he defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:
>
> (A) The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, must contain a statement of the certified question of law reserved by the defendant for appellate review;
> (B) The question of law must be stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;
> (C) The judgment or document must reflect that the certified question was expressly reserved with the consent of the state and the trial judge; and
> (D) The judgment or document must reflect that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case . . . .

Tenn. R. Crim. P. 37(b)(2); State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988).

The record evinces that the requirements of Rule 37 are met as to the two convictions. The final judgment contains a hand-written statement of the certified question of law, and the trial judge signed below the hand-written statement. The question of law is, therefore, stated in the final order and clearly identifies the scope and limits of the legal issue reserved. Further, the hand-written

-4-

statement indicates that the question of law is reserved "with the consent of the State and the trial judge." Finally, the certified question of law is dispositive of the case. A dispositive issue is one where the appellate court "must either affirm the judgment or reverse and dismiss. A question is never dispositive when [the appellate court] might reverse and remand for trial . . . ." State v. Wilkes, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984). If the evidence seized is suppressed, there would be no evidence to support the guilty plea to the two charges. Therefore, this issue is dispositive on appeal, and we will address it.

### B. Motion to Suppress

The Defendant claims the search of his residence and the seizure of items in that residence violated the Fourth Amendment to the United States Constitution's guarantee against unreasonable searches and seizures. The Fourth Amendment has been applied to the States via the Fourteenth Amendment to the United States Constitution. Additionally, article I, section 7 of the Tennessee Constitution provides:

> That people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offenses are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

The Defendant cites the following often quoted statement from Coolidge v. New Hampshire: "Thus, the most basic constitutional rule in this area is that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well delineated exceptions." 403 U.S. 443, 454-55 (1971); accord Groh v. Ramirez, 540 U.S. 551, 559 (2004); Payton v. New York, 445 U.S. 573, 586 (1980). If the evidence was obtained in violation of the Fourth Amendment, it must be excluded. See Mapp v. Ohio, 367 U.S. 643, 655-57 (1961) (applying exclusionary rule to states); State v. Ross, 49 S.W.3d 833, 840 (Tenn. 2001) (citing Simmons v. United States, 390 U.S. 377, 389 (1968)). We recognize that "[t]he [Fourth] Amendment is to be liberally construed and all owe the duty of vigilance for its effective enforcement lest there shall be impairment of the rights for the protection of which it was adopted. There is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances." Go-Bart Importing Co. v. United States, 282 U.S. 344, 357 (1931) (citations omitted). In the case under submission, we will address what we believe to be the most direct route to constitutionality which is, in theory, as follows: the officers had the right to be both on the porch and inside the house due to consent to enter by a third party. Once there, the officers witnessed a felony being committed, giving them the right to arrest the individuals, search the area around the arrested individuals, and seize the evidence there or the evidence in plain view.

The standard of review for a trial court's findings of fact and conclusions of law in a

suppression hearing was established in <u>State v. Odom</u>, 928 S.W.2d 18 (Tenn. 1996). This standard mandates that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." <u>Id.</u> at 23; <u>accord</u> <u>State v. Randolph</u>, 74 S.W.3d 330, 333 (Tenn. 2002). The prevailing party in the trial court is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." <u>Odom</u>, 928 S.W.2d at 23. Furthermore, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." <u>Id.</u> However, this Court reviews the trial court's application of the law to the facts de novo, without any deference to the determinations of the trial court. <u>State v. Walton</u>, 41 S.W.3d 75, 81 (Tenn. 2001). The defendant bears the burden of demonstrating that the evidence preponderates against the trial court's findings. <u>Odom</u>, 928 S.W.2d at 22-23; <u>State v. Yeargan</u>, 958 S.W.2d 626, 629 (Tenn. 1997).

We conclude that the officers were rightfully on the porch of the Defendant's home. The officers were on the Defendant's porch to perform a "knock and talk." The validity of the "knock and talk" procedure has been upheld by this Court. <u>See</u> <u>State v. Cothran</u>, 115 S.W.3d 513, 522 (Tenn. Crim. App. 2003). This Court held that neither probable cause nor reasonable suspicion was needed to perform a "knock and talk." <u>Id.</u> at 522. Further, this Court has stated that the officers can rightfully be on the land "absent express orders from the person in possession against any possible trespass." <u>Id.</u> at 521 (citing <u>United States v. Cormier</u>, 220 F.3d 1103, 1109 (9th Cir. 2000)). The Defendant argues that Officer Rose and Officer Moody were, in fact, not on the land rightfully. Photographs were admitted at trial that showed trees in front of the residence with "No Trespassing" signs. Although this issue was not explicitly ruled on by the trial court, it implicitly found the signs were not posted at the time of the "knock and talk." We know this because the trial court heard testimony on the issue and examined the photographs purporting to be of signs present at the time of the search. Following this evidence, the trial court stated, "The Court finds that the procedure used for the knock and talk procedure in this case was acceptable." The only issue presented that would have made the "knock and talk" unacceptable would have been the presence of the "No Trespassing" signs. While the Defendant has presented photographs depicting these signs, the photographs appear to have been taken sometime in the winter in that there are no leaves on the trees. Because this search was conducted on April 14, 2005, we cannot conclude that these photographs depict the land at the time of the search. Therefore, the trial court did not abuse its discretion when it implicitly determined that the signs were not posted at the time of the search.

Second, we conclude that the officers legally entered the Defendant's residence based on the reasonable belief that there was valid consent to enter. The Defendant claims that the "consent" to enter the house, given by Watson, was not sufficient to grant the authority to enter the residence. When the officers knocked on the door, Watson answered. Upon asking Watson if they could speak with the Defendant, Watson replied, "Come on in. I'll get him." At that moment, it was clear that Watson was not the Defendant and therefore not the owner of the residence. However, this Court has stated the law concerning consent by a third party:

The [S]tate may satisfy its burden of proof in this regard either by demonstrating that

> a third party in fact possessed common authority as defined above or, alternatively, by demonstrating that the facts available to the searching police officers would have warranted a man of reasonable caution in the belief that the consenting party had authority over the premises.

State v. Ellis, 89 S.W.3d 584, 594 (Tenn. Crim. App. 2002) (citing Illinois v. Rodriguez, 497 U.S. 177, 188-189 (1990); United States v. Chaidez, 919 F.2d 1193, 1201-02 (7th Cir. 1990); State v. Clark, 844 S.W.2d 597, 599 n.1 (Tenn. 1992); State v. Seaton, No. 03C01-9701-CC-00040, 1998 WL 915903, at *3 (Tenn. Crim. App., at Knoxville, Nov. 18, 1998), *perm. app. denied* (Tenn. May 3, 1999)). That is, in the case under submission, would a man of reasonable caution have determined that Watson had the authority to invite the police in when he said, "Come on in." We conclude that a man of reasonable caution would have believed that Watson had authority over the premises. See State v. Albert D. Wilson, II, No. E2002-00890-CCA-R3-CD, 2003 WL 22080791, at *8 (Tenn. Crim. App., at Knoxville, Sept. 9, 2003) (holding that officers could have reasonably determined third party had authority to consent to entry in similar circumstances). Thus, Officers Moody and Rose had the right to enter the residence based on the consent by Watson.

Next, once inside,[2] the officers witnessed a methamphetamine lab in production. This gave the officers probable cause to believe a felony was being committed, for which they would have had the right to arrest the individuals had they been outside the home. See Tenn. Code Ann. § 40-7-103(a)(1), (3) (2003) ("An officer may, without a warrant, arrest a person: For a public offense committed or a breach of the peace threatened in the officer's presence; [or] [w]hen a felony has in fact been committed, and the officer has reasonable cause for believing the person arrested to have committed it."); State v. Lewis, 36 S.W.3d 88, 97-98 (Tenn. Crim. App. 2000). "Probable cause exists if the facts and circumstances within the officer's knowledge at the time of the arrest, and of which the officer 'had reasonably trustworthy information sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense.'" State v. Henning, 975 S.W.2d 290, 300 (Tenn. 1998) (quoting Beck v. Ohio, 379 U.S. 89 (1964)). However, the Tennessee Supreme Court has stated, "warrantless felony arrests inside a home are generally prohibited by the Fourth Amendment absent probable cause and exigent circumstances." Id. (citing Payton v. New York, 445 U.S. 573, 583-90 (1980); State v. Clark, 844 S.W.2d 597, 599 (Tenn. 1992)); see State v. Carter, 160 S.W.3d 526, 531 (Tenn. 2005). A State-created exigency will not suffice. State v. Hendrix, 782 S.W.2d 833, 835 (Tenn. 1989).

One exception to the above stated general rule is if the officers were allowed to enter the home by consent. See David Louis Raybin, 9 Tenn. Prac., Crim. Prac. & Procedure § 18.201 (2007) ("The requirement of an arrest warrant does not apply, apart from exigent circumstances in several other contexts: (1) if the premises are not private, (2) *if entry is by consent*, (3) or where the entry

---

[2]We note that the trial court found the officers could see the methamphetamine production from their place on the front porch, outside the threshold of the doorway. However, because the officers were given permission to enter by someone they reasonably thought had the authority to do so, where they were when they saw the methamphetamine production is of less significance.

is pursuant to a search warrant." (emphasis added)). An opinion from our Court authored by current sitting Sixth Circuit Judge Martha Craig Daughtrey in 1982 supports this view. See State v. Ricky Ray Hipshire, Hamblen County, CCA #146 (Tenn. Crim. App., at Knoxville, May 20, 1982). In Hipshire, officers entered Hipshire's residence with permission from his girlfriend, who actually owned the residence. Id. at 3-4. Once inside by consent, officers spotted Hipshire and, with probable cause, arrested him. Id. We stated:

> When the investigating officer, standing where he had a right to be, saw Hipshire attempting to hide in another room, there was no constitutional barrier to Hipshire's immediate apprehension and arrest. The trial court, having found that entry into the Everhart home was made with Ms. Everhart's consent, correctly held that Payton v. New York, 445 U.S. 573 (1980)[,] is inapplicable to this case. Hipshire's arrest, although warrantless, was constitutionally valid, and the evidence seized incident to that arrest was fully admissible at trial.

Id. at 5. This Court concludes the same analysis applies today, and, thus, the Defendant was validly arrested.

The seizure of evidence is constitutional under the "plain view doctrine" if the requirements of Armour v. Totty have been met. 486 S.W.2d 537 (Tenn. 1972) The objects seized must: (1) have been in plain view; (2) the viewer must have had the right to be in the viewing place; (3) the discovery must have been inadvertent;[3] and (4) the incriminating nature must have been immediately apparent. Armour, 486 S.W.2d at 538-39.

Officers testified the materials were located on the floor around one of the individuals in the home. They could see these materials from outside the door and once they stepped inside the residence. Thus, it was in plain view, satisfying requirement one. As discussed above, the officers had the right to be both on the porch and inside the home pursuant to the consent given by Watson. Thus, requirement two has been met. Third, the discovery was inadvertent in that the officers did not have probable cause to suspect that the materials would be there. They had a mere suspicion based on an anonymous tip. See State v. Byerley, 635 S.W.2d 511, 514 (Tenn. 1982) ("A discovery is inadvertent if the officer suspects, has a feeling, or knows of the possibility of, undefined contraband in an unspecified location; but, where his level of knowledge rises to that of probable cause, inadvertency no longer exists and a warrant is required"), abrogated by Horton v. California, 496 U.S. 128 (1990). Finally, it is clear from the facts of the case that the officers had many years of experience with methamphetamine lab raids. Once they saw the instrumentalities used to produce methamphetamine, the officers immediately knew what they were and had probable cause to believe the evidence would be used to help prosecute the individuals. Thus, the trial court correctly

---

[3]The inadvertence requirement, first required under the Fourth Amendment of the United States Constitution, as determined by Coolidge v. New Hampshire, 403 U.S. 443 (1971), has been discarded in the federal realm by Horton v. California, 496 U.S. 128, 130 (1990). The Tennessee Supreme Court has not addressed the issue since Horton. See Tenn. Crim. Trial Practice § 4:31 Warrantless Searches–Open view and Plain View–Inadvertent Discovery (2006).

determined that the seizure of the evidence was constitutional.

We conclude the evidence does not preponderate against the findings of the trial court. The officers, acting under the reasonable belief that the person who opened the door had the authority to allow them in, entered the residence where they saw a felony being committed and immediately recognized the incriminating nature of the evidence in the home. The officers therefore had the right to seize the evidence found in plain view. The Defendant is not entitled to relief on this issue.

### III. Conclusion

We agree with the judgments of the trial court. The State's action was constitutional. Accordingly, we affirm the Defendant's convictions.

_____
ROBERT W. WEDEMEYER, JUDGE