# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 7, 2012

## STATE OF TENNESSEE v. BRADLEY HAWKS

**Direct Appeal from the Circuit Court for Crockett County**
**No. 3916     Clayburn Peeples, Judge**

---

**No. W2011-01749-CCA-R3-CD  - Filed January 2, 2013**

---

The appellant, Bradley Hawks, pled guilty in the Crockett County Circuit Court to possession of .5 grams or more of a Schedule II controlled substance, methamphetamine, with intent to sell and received an eight-year sentence to be served in confinement. As part of the plea agreement, the appellant reserved a certified question of law, namely whether exigent circumstances justified law enforcement's searching his residence without a warrant.  Based upon the record and the parties' briefs, we conclude that evidence of exigent circumstances does not exist in this case.  Therefore, the appellant's conviction is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed,**
**and the Case is Remanded**.

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, and ROGER A. PAGE, JJ., joined.

Jamie Kay Berkley, Trenton, Tennessee, for the appellant, Bradley Hawks.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Garry G. Brown, District Attorney General; and Hillary Lawler Parham, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The record reflects that in June 2007, the Crockett County Grand Jury indicted the appellant for possession of .5 grams or more of methamphetamine with intent to sell, manufacturing methamphetamine, domestic assault, and two counts of child abuse and

neglect. The appellant filed a motion to suppress all evidence obtained as a result of the police searching his residence, arguing that the police did not have probable cause for the search and that the warrantless search was illegal. Relevant to this appeal, the appellant also argued that exigent circumstances did not exist to exempt the police from obtaining a search warrant.

The trial court held an evidentiary hearing. At the hearing, the prosecutor stated to the trial court, without any explanation, that "we're arguing a plain view case and we're prepared to go forward on that." Captain Eric Uselton of the Crockett County Sheriff's Department, testified that at the time of the search, he was a lab-certified special agent with the West Tennessee Violent Crimes and Drug Task Force. On April 10, 2007, a domestic violence call was placed from the appellant's residence, and police officers went to the home. When they arrived, they smelled a very strong odor. They could not identify the odor, so they evacuated the appellant's wife and children and sent them to the emergency room for testing. The appellant was not present. The officers moved away from the house and called Captain Uselton to the scene. Captain Uselton stated that when he arrived at the residence, he could smell anhydrous ammonia and starter fluid from the road, which was about one hundred yards away from the house. He said he and other lab-certified officers wore "air packs" and entered the home through the back door because "the back door was standing wide open . . . and that was where the smell was coming from." Captain Uselton made sure the appellant was not inside the residence. Then he came out of the house, took off his air pack, and determined that the smell was coming from an Igloo cooler beside a garbage can near the back door. He opened the cooler and found a white chalky powder that was soaking in anhydrous ammonia. He described the cooler as "somewhat active in itself as a one pot method of cooking methamphetamine."

On cross-examination, Captain Uselton testified that when he arrived at the scene, the police officers were waiting for him "at a distance" from the home. He spoke to the officers and learned the appellant was not present. Captain Uselton said that he entered the house and looked for the appellant "because we didn't know where he was and to see where the smell was coming from." When he came out of the residence, he found the cooler by the back door. The cooler contained Sudafed wrapped in coffee filters soaking in anhydrous ammonia, starter fluid, and camp fuel. Captain Uselton also searched an outbuilding on the property and found two jars that contained small amounts of starter fluid, an ingredient for manufacturing methamphetamine.

The trial court did not address whether the evidence was admissible under the plain view doctrine. Instead, the trial court stated as follows:

> I think under the circumstances the officers did

> only what they could be expected to do. Safety
> considerations were such that they would have
> been remiss to have done anything else, so I'm
> overruling the Motion[.]

Subsequently, the appellant pled guilty to possession of .5 grams or more of methamphetamine with intent to sell, a Class B felony, and received a sentence of eight years in confinement. Pursuant to the plea agreement, he reserved a certified question of law as to whether the search and his arrest violated the United States and Tennessee Constitutions. On direct appeal, this court held that the certified question failed to identify the scope and limits of the legal issue reserved and dismissed the appeal. State v. Bradley Hawks, No. W2008-02657-CCA-R3-CD, 2010 Tenn. Crim. App. LEXIS 157, at *14 (Jackson, Feb. 19, 2010), perm. to appeal denied, (Tenn, 2010).

The appellant filed a pro se petition for post-conviction relief, arguing that trial counsel's failure to preserve the certified question of law rendered his guilty plea involuntary. After an evidentiary hearing, the post-conviction court agreed with the appellant and granted the petition. Thereafter, the appellant re-entered his guilty plea to possession of .5 grams or more of methamphetamine with intent to sell and properly reserved the certified question of law which is now before this court.

## II. Analysis

The appellant contends that the trial court should have granted his motion to suppress because the warrantless search of his home was illegal. He contends that the search did not fall within the exigent circumstances exception to the warrant requirement because his home had been evacuated when law enforcement discovered the incriminating evidence. Therefore, law enforcement had no reason to proceed with the warrantless search. The State does not address whether exigent circumstances existed in this case but argues that the trial court properly denied the motion because the evidence was in plain view of officers legally entitled to be at the home in response to a call for assistance. We conclude that the trial court erred by denying the appellant's motion to suppress.

In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. Nevertheless, appellate courts will review the trial court's application of law to the facts purely de novo. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the

State, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23.

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution provide protection for citizens against "unreasonable searches and seizures." Generally, a warrantless search is considered presumptively unreasonable, thus violative of constitutional protections. See State v. Walker, 12 S.W.3d 460, 467 (Tenn. 2000). The recognized exceptions to the requirement include (1) a search incident to an arrest, (2) the plain view doctrine, (3) a consent to the search, (4) a Terry stop and frisk, and (5) the existence of exigent circumstances. State v. Berrios, 235 S.W.3d 99, 104 (Tenn. 2007). Exigent circumstances related to the warrantless search of a residence include (1) hot-pursuit, (2) to thwart escape, (3) to prevent the imminent destruction of evidence, (4) in response to an immediate risk of serious harm to the police officers or others, and (5) to render emergency aid to an injured person or to protect a person from imminent injury. State v. Meeks, 262 S.W.3d 710, 723 (Tenn. 2008). Moreover, our supreme court has explained as follows:

> Exigent circumstances are those in which the urgent need for immediate action becomes too compelling to impose upon governmental actors the attendant delay that accompanies obtaining a warrant. Thus, in assessing the constitutionality of a warrantless search, the inquiry is whether the circumstances give rise to an objectively reasonable belief that there was a compelling need to act and insufficient time to obtain a warrant. The exigency of the circumstances is evaluated based upon the totality of the circumstances known to the governmental actor at the time of the entry. Mere speculation is inadequate; rather, the State must rely upon specific and articulable facts and the reasonable inferences drawn from them. The circumstances are viewed from an objective perspective; the governmental actor's subjective intent is irrelevant. The manner and the scope of the search must be reasonably attuned to the exigent circumstances that justified the warrantless search, or the search will exceed the bounds authorized by exigency alone. Where the asserted ground of exigency is risk to the safety of the officers or others, the governmental actors must have an objectively reasonable basis for concluding that there is an immediate need to act to protect themselves and others from serious harm.

Id. at 723-24. It is the State's burden to demonstrate the existence of exigency. See State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

In Meeks, a motel patron called the police to report a strong odor. 262 S.W.3d at 714. The caller also complained about burning eyes and headaches. Id. An officer went to the motel, met with the caller, and recognized the "unmistakable" smell of a methamphetamine laboratory coming from the room next door. Id. When backup officers arrived, the officers went to the suspect room. Id. They heard voices in the room and knocked on the door, but no one answered. Id. The officers decided to enter the room due to the "dangers posed by manufacturing methamphetamine" and obtained a key from the manager. Id. at 715. However, when they tried to open the door, the door would not open completely due to a chain lock, and a large cloud of fumes escaped through the partially opened door. Id. The officers decided to kick open the door. Id. Inside, they found the two defendants, one of whom was unconscious, and an active methamphetamine laboratory. Id. The defendants were removed from the scene, and the officers obtained a search warrant based upon the information they had obtained from their warrantless entry into the room. Id. During the subsequent search, the officers found methamphetamine and various parts of a methamphetamine laboratory. Id. at 715-16. The defendants were indicted for manufacturing methamphetamine, possessing methamphetamine, and possessing drug paraphernalia. Id. at 716. They filed a motion to suppress, arguing that the warrantless entry was not justified by exigent circumstances. Id. The trial court granted the motion. Id. However, this court reversed the trial court, holding that the defendants' actions had presented an immediate threat to public safety. Id.

On appeal to our supreme court, the supreme court described methamphetamine laboratories as "highly dangerous," noting that

> [i]n addition to being highly combustible, the vapors or fumes that are generated in the production of methamphetamine pose further dangers. For example, exposure to the toxic fumes or vapors produced during the manufacture of methamphetamine, some of which are carcinogenic, can cause serious inhalation injuries to those at the laboratory site and sometimes even to neighbors.

Id. at 725. The court also noted that some jurisdictions have adopted a per se rule that the discovery of an active methamphetamine laboratory creates an exigent circumstance that does not require a search warrant while other jurisdictions have determined that the exigency is based on whether the location of the laboratory creates a danger to others such as neighbors, law enforcement officials, and the individuals manufacturing the methamphetamine. Id. at

725-26. Regardless, "the scope of a permissible warrantless search remains limited to the scope of the exigency." Id. at 726. Our supreme court concluded that the facts in Meeks clearly supported the existence of exigent circumstances and "provided the officers with an objectively reasonable basis for concluding that there was an immediate need to act to protect themselves and others from serious harm." Id. at 726, 727.

Turning to the instant case, we initially note that the appellant does not claim that law enforcement officers lacked probable cause to believe methamphetamine was being produced in the appellant's home. Instead, his argument focuses entirely on whether exigent circumstances existed to justify the warrantless search. The appellant argues that exigent circumstances did not exist because the house had been "cleared," the entering officers were wearing safety equipment, and there was no immediate harm to the officers or others.

The facts in this case are significantly different from the facts in Meeks. Granted, the odor of anhydrous ammonia and starter fluid was strong and could be smelled from a significant distance. However, by the time Captain Uselton arrived at the scene, police officers had removed the appellant's family from the home, had determined that the appellant was not present, and were waiting "a distance" away. Captain Uselton arrived and searched the home again but did not find anyone inside. It was the State's burden to show the existence of exigent circumstances. However, unlike Meeks, the State did not present any evidence about the dangers the strong odor or the soaking Sudafed posed to Captain Uselton, other officers at the scene, the appellant's neighbors, or anyone in the surrounding vicinity. Therefore, we conclude that the proof fails to show the existence of exigent circumstances that exempted law enforcement from searching the residence without a warrant.

Regarding the State's claim that the trial court properly denied the motion to suppress because the evidence was admissible under the plain view doctrine, items fall within the "plain view" exception to the warrant requirement if (1) the seized items were in the officer's plain view, (2) the officer was rightfully in the position from which he or she viewed the items, and (3) the items had an incriminating nature that was immediately apparent to the officer. State v. Cothran, 115 S.W.3d 513, 524-25 (Tenn. Crim. App. 2003). The State argues that the officers were "legally entitled to be at the home in response to a call for assistance" and that the odor "had an incriminating nature immediately apparent to the officer based upon his experience." However, Captain Uselton and the other lab-certified officers were not at the home in response to a call for assistance. They had been summoned to the scene by the original police officers who responded to the call and smelled the strange odor. Moreover, we have already determined that exigent circumstances did not exist to justify Captain's Uselton's entering the home without a warrant. Therefore, Captain Uselton was not rightfully in the position from which he discovered the evidence. The "plain view" view exception to the warrant requirement does not apply.

-6-

### III. Conclusion

Based upon the record and the parties' briefs, we conclude that the trial court should have granted the appellant's motion to suppress. The appellant's conviction is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

_____
NORMA McGEE OGLE, JUDGE