IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 7, 2019 at Jackson

## WILLIAM HENRY SMITH, JR. v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Bedford County**
**No. 18080PC     Forest A. Durard, Jr., Judge**

_____

### No. M2018-01302-CCA-R3-PC
_____

The petitioner, William Henry Smith, Jr., appeals the denial of his petition for post-conviction relief, which petition challenged his 2015 conviction of conspiracy to sell and deliver one-half grams or more of a Schedule II drug,[1] alleging that he was deprived of the effective assistance of counsel. Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, and D. KELLY THOMAS, JR., JJ., joined.

Jonathan C. Brown, Fayetteville, Tennessee, for the appellant, William Henry Smith, Jr.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Robert J. Carter, District Attorney General; and Mike Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

A Bedford County Circuit Court jury convicted the petitioner of conspiracy to sell and deliver 0.5 grams or more of a Schedule II controlled substance arising out of an incident in which the petitioner, along with Kavaris Kelso, arranged to sell one-and-a-half ounces of cocaine to Candy Rutledge, a confidential informant ("CI"). *State v. William Henry Smith, Jr.*, No. M2016-01475-CCA-R3-CD (Tenn. Crim. App., Nashville, Jan. 13, 2017). On direct appeal, this court summarized the evidence at trial as follows:

_____

[1]     Although the offense charged in this case is disjunctive in the statute, *see* T.C.A. § 39-17-417(a), the indictment charged the petitioner with "knowingly, unlawfully and feloniously conspir[ing] to sell *and* deliver a controlled substance." (emphasis added).

. . . [T]he [petitioner] negotiated with the CI to sell her an ounce and a half of cocaine. The [petitioner] and the CI knew each other from grade school and communicated via Facebook where the [petitioner] first sought to sell the CI drugs. When the CI was in Shelbyville, the [petitioner] contacted the CI via text to confirm the arrangement they had made regarding a drug sale. The following day, the CI met with the [petitioner] and, for the first time, Mr. Kelso to discuss more details of the transactions. Following this meeting, the CI met with police, who thoroughly searched her and provided her with a recording device. The CI then contacted the [petitioner] who agreed to meet the CI in her motel room where he was to call Mr. Kelso to learn the exact location of the transaction. After the [petitioner] spoke with Mr. Kelso, the [petitioner] and the CI left the motel and got into her rental car. The CI drove the [petitioner], at the [petitioner's] direction, in a circuitous route around town for approximately a half hour before ultimately arriving at the Bedford Manor Apartments.

At the motel room, throughout the drive, and once at the apartment complex, the [petitioner] attempted to convince the [CI] to give him the money, saying that he would get the drugs and bring them back to her. At the apartment complex, Mr. Kelso stood near the car as the [petitioner] negotiated how the exchange should occur.

*Id.*, slip op. at 9. The trial court sentenced the petitioner to 15 years' incarceration, and this court affirmed the petitioner's conviction on appeal. *Id.*, slip op. at 10. In May 2017, the petitioner filed a petition for "Writ of Error," which the trial court treated as a writ of error coram nobis and denied.

The petitioner filed a timely pro se petition for post-conviction relief on January 11, 2018. After the appointment of counsel, the petitioner filed an amended petition for post-conviction relief, incorporating the pro se petition and alleging the ineffective assistance of the petitioner's trial and appellate counsel.

At the June 18, 2018 evidentiary hearing, the petitioner testified that he met with trial counsel four to five times before trial with each meeting lasting approximately

10-15 minutes.  The petitioner contended that trial counsel never discussed a trial strategy with him, but, instead, he discussed only whether the petitioner should accept the State's plea offer in light of Ms. Rutledge's testimony.  He also said that trial counsel never discussed his investigation of the case with him.  The petitioner asked trial counsel to move to suppress certain evidence, but trial counsel told the petitioner that, with the testimony of Ms. Rutledge and the arresting officer, a jury would convict him anyway.

The petitioner stated that Ms. Rutledge had testified at the preliminary hearing that she had never worked for the drug task force before, and, because the petitioner believed that testimony to be a lie, he brought that matter to the attention of trial counsel, but counsel did not investigate the matter.  He acknowledged that trial counsel said that he would move to discover Ms. Rutledge's criminal history.  The petitioner said that he had known Ms. Rutledge since elementary school, was aware of her criminal history, and notified counsel of such, but trial counsel failed to investigate her involvement in other cases of the drug task force.  The petitioner acknowledged that trial counsel had a copy of the preliminary hearing transcript but stated that trial counsel did not admit the transcript as a trial exhibit or impeach Ms. Rutledge with any inconsistent statements.

The petitioner asserted that Agent Timothy Miller also testified at trial inconsistently with his testimony at the preliminary hearing, but trial counsel likewise did not use the inconsistent statements for impeachment.  By way of illustration, the petitioner stated that Agent Miller testified at trial that Ms. Rutledge had worked with the drug task force for three years but that, at the preliminary hearing, Agent Miller had stated that he could not remember Ms. Rutledge's participating in any other cases.

The petitioner acknowledged that the police did not find any illegal substances on him at the time of his arrest.  He stated that, at the time of his trial, his co-conspirator, Mr. Kelso, had been charged with murder in an unrelated case and that Mr. Kelso's name had been mentioned by newspapers in connection with the murder.  The petitioner asserted that, despite this negative publicity as to Mr. Kelso, trial counsel failed to object to the use of Mr. Kelso's name at trial.

The petitioner testified that he did not understand his sentencing exposure or his career offender status because trial counsel never explained it to him.  He understood the State's plea offer to be for 15 years to be served at 45 percent.  He acknowledged that he had "about five prior felonies" but stated that he did not understand that he would be considered a career offender if convicted at trial.  He contended that, had he understood the career offender sentencing scheme, he would have given the State's plea offer greater consideration.  According to the petitioner, trial counsel never

-3-

discussed the substance of the appeal with him, and the petitioner did not feel that counsel had adequately argued the issues.

During cross-examination, the petitioner testified that a proper trial strategy should have included attacking Ms. Rutledge's credibility and impeaching her and Agent Miller with inconsistent statements. He acknowledged that trial counsel cross-examined Ms. Rutledge on her prior convictions but maintained that counsel failed to investigate other cases in which Ms. Rutledge may have participated with the drug task force.

He acknowledged that his and Ms. Rutledge's were the voices heard on the audio recording that was admitted at trial. He also acknowledged that other officers testified at trial to observing the interactions between the petitioner, Ms. Rutledge, and Mr. Kelso. He agreed that the cocaine seized in this case was found on Mr. Kelso. The petitioner understood that Mr. Kelso was named in the indictment but averred that the State's referring to Mr. Kelso and saying, "I am sure you all read the newspaper and watch the . . . news" during jury selection implied that Mr. Kelso was charged with murder in another case and prejudiced the jury against him by suggesting the petitioner's guilt based on his association with Mr. Kelso.

The petitioner agreed that trial counsel's strategy was to point to Mr. Kelso as the sole guilty party, but the petitioner maintained that this strategy was inadequate to defend against a charge of conspiracy. Instead, he contended that counsel should have devised a strategy to attack the conspiracy charge, suggesting that counsel should have argued that the petitioner was never recorded talking to Mr. Kelso. As to Ms. Rutledge's testimony that Mr. Kelso called the petitioner's phone at some point to arrange the transaction, the petitioner asserted that counsel should have argued the lack of corroborating evidence. He acknowledged that Ms. Rutledge testified to meeting with the petitioner and Mr. Kelso before the recorded interaction occurred, but the petitioner maintained that Ms. Rutledge's testimony was not credible.

On redirect examination, the petitioner testified that trial counsel never discussed with him the possibility of seeking a change of venue.

Trial counsel testified that he met with the petitioner five or six times and reviewed all discovery materials with the petitioner at the jail and that an investigator from his office played all of the audio recordings for the petitioner. He stated that he did not file any pretrial motions because he found no legal basis to do so. Trial counsel was aware of Mr. Kelso's pending murder charge and recalled that it was a "[f]airly" big deal within Bedford County but stated that most people did not pay attention to it. He recalled being concerned about the petitioner's being associated with Mr. Kelso in light of the

murder charge. He discussed his concerns with the prosecutor who agreed that Mr. Kelso's unrelated charges would not be raised at trial. Trial counsel stated that, in the State's jury voir dire, the prosecutor asked if anyone knew Mr. Kelso but did not mention Mr. Kelso's criminal history.

Trial counsel said that he did not interview Ms. Rutledge because he could not locate her. He had learned that Ms. Rutledge was in jail, but when he went to interview her, she had been released. He stated that his investigation included speaking with the officers on the drug task force, listening to the audio recordings, reading the preliminary hearing transcript, and investigating the prior record. He contended that Ms. Rutledge's testimony was consistent with all of the information he had gathered about the case. Trial counsel stated that he believed it was important to impeach Ms. Rutledge's credibility, which he did at trial by cross-examining her about her prior convictions. He recalled that, at trial, Ms. Rutledge testified that she had worked with other agencies in drug-related cases and that, at the preliminary hearing, she testified that she had never worked with this particular drug task force before this case.

Trial counsel testified that he discussed the sentencing range with the petitioner and that the petitioner understood that he would be a career offender if convicted at trial. He also discussed the State's plea offer with the petitioner. Trial counsel said that he did not reduce the State's offer or the petitioner's sentencing exposure to writing because he had discussed it orally with the petitioner.

During cross-examination, trial counsel stated that he understood that the State's case relied heavily on the audio recording of the petitioner and Ms. Rutledge's arranging a drug deal. He agreed that the recording and the testimony against the petitioner were "pretty damaging." Trial counsel explained that his trial strategy was to show that Mr. Kelso was the drug dealer and that the petitioner's involvement rose only to the level of the lesser included offense of facilitation. He stated that he did not think that Ms. Rutledge's inconsistent statements about whether she had worked for the drug task force before this case spoke to her credibility.

He testified that the State's plea offer was not significantly favorable to the petitioner because the State offered 15 years to be served at 45 percent and the petitioner's exposure at trial was 15 years to be served at 60 percent. Trial counsel maintained that he explained to the petitioner the significance of his criminal history and the career offender status.

Trial counsel explained that there was no legal basis on which he could move to suppress the drugs found on Mr. Kelso without admitting that the drugs

-5-

belonged to the petitioner. Similarly, he stated that he did not move for a change of venue because he did not believe there was a legal basis supporting such a motion.

At the close of evidence, the post-conviction court took the matter under advisement. In its written order denying post-conviction relief, the court found that no basis existed for the suppression of any evidence because no evidence was collected from the petitioner's person at the time of arrest. The court further found that, because the petitioner failed to offer any evidence of Ms. Rutledge's prior activities with the drug task force, he failed to show that he was prejudiced by counsel's failure to investigate the matter. Similarly, the court concluded that, although trial counsel did not interview Ms. Rutledge before trial, the petitioner presented no evidence that such an interview would have provided him with any information beyond what was adduced at the preliminary hearing. Additionally, because the petitioner did not call Ms. Rutledge or Agent Miller to testify at the evidentiary hearing and did not offer the transcript of the preliminary hearing into evidence, the court concluded that he failed to establish that trial counsel performed deficiently by failing to impeach them with inconsistent statements.

Furthermore, the post-conviction court concluded that because "no unnecessary emphasis was placed on the name" of Mr. Kelso at trial, the petitioner failed to establish prejudice as to that issue. Likewise, the court concluded that the petitioner presented no evidence to establish that he was prejudiced by trial counsel's failure to discuss a trial strategy with him. As to trial counsel's failure to argue mitigating factors at sentencing, the court concluded that mitigating and enhancement factors were irrelevant when sentencing a defendant as a career offender. Finally, the court observed that the sole issue counsel raised on appeal was sufficiency of the evidence and that this court's rejecting the petitioner's arguments and affirming his convictions did not render trial counsel's representation on appeal deficient.

In this timely appeal, the petitioner argues that the post-conviction court erred by denying post-conviction relief, asserting that he was deprived of the effective assistance of counsel by trial counsel's (1) failing to move to suppress certain evidence, (2) failing to properly investigate and impeach Ms. Rutledge, (3) failing to discuss a trial strategy with the petitioner, (4) failing to explain to the petitioner his sentencing exposure as a career offender, (5) failing to seek a venue change, (6) failing to argue mitigating factors at sentencing, and (7) failing to adequately argue the issue of sufficiency on appeal.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of

Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation omitted), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The petitioner first asserts that counsel performed deficiently by failing to seek the suppression of "the illegal substance that was recovered from the co-defendant." The post-conviction court found that no evidence was found on the petitioner at the time

of his arrest and that, therefore, no evidence existed that was subject to suppression. The record supports the post-conviction court's conclusion. The petitioner conceded that the evidence at issue was found on his co-defendant and offers no legal basis on which he would have standing to suppress its admission. *See State v. Cothran*, 115 S.W.3d 513, 520 (Tenn. Crim. App. 2003) (The constitutional protections against unreasonable search and seizure "are personal in nature, and 'they may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure'" (quoting *State v. Ross*, 49 S.W.3d 833, 840 (Tenn. 2001)). "In order to challenge the reasonableness of a search or seizure, the defendant must have a legitimate expectation of privacy in the place or thing to be searched." *Cothran*, 115 S.W.3d at 520-21 (citing *Ross* 49 S.W.3d at 840); *see also Smith v. Maryland*, 442 U.S. 735, 740 (1979); *State v. Munn*, 56 S.W.3d 486, 494 (Tenn. 2001); *State v. Oody*, 823 S.W.2d 554, 560 (Tenn. Crim. App. 1991). Because the petitioner has failed to establish a ground on which the drugs could have been suppressed, he has failed to show that trial counsel performed deficiently by failing to move for suppression.

As to the petitioner's claim that counsel should have moved to compel Ms. Rutledge's criminal history and prior activities with the drug task force, we observe that the petitioner has failed to present any evidence of what counsel could have discovered had he investigated those matters. Hence, the petitioner cannot prevail on this claim. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing."). Furthermore, the post-conviction court found that trial counsel cross-examined Ms. Rutledge on her criminal record, and the petitioner has failed to show on what other criminal activities counsel could have questioned her.

Next, the petitioner asserts that trial counsel failed to discuss a trial strategy with him. At the evidentiary hearing, counsel testified that his trial strategy was to show that Mr. Kelso was the primary drug dealer and that the petitioner's culpability rose only to the level of facilitation. The petitioner suggested alternative defenses trial counsel could have asserted at trial; however, counsel's strategy was not unreasonable under the circumstances, and we will not second-guess trial counsel's decision. *See Adkins*, 911 S.W.2d at 347. Although the petitioner contends that trial counsel should have discussed the trial strategy with him, the petitioner presented no evidence showing how he could have achieved a different outcome at trial had he known of trial counsel's strategy.

The petitioner next argues that trial counsel did not explain to him his sentencing exposure as a career offender. The petitioner's statement at the evidentiary hearing that he would have "put a little more thought into" the State's plea offer had he

-8-

understood his sentencing exposure is insufficient to establish that he would have accepted the offer. Consequently, the petitioner has failed to show prejudice on this issue. Relatedly, the petitioner asserts that trial counsel failed to argue any mitigating factors at his sentencing hearing. Because the petitioner did not offer any proof of mitigating factors that trial counsel could have raised, he has failed to establish that counsel performed deficiently at the sentencing hearing. Moreover, because the petitioner was sentenced as a career offender, he was sentenced to the only statutorily available sentence.

As to the petitioner's claim that trial counsel should have moved for a change of venue due to Mr. Kelso's pending murder charge, the post-conviction court found that Mr. Kelso's murder charge was not raised at trial and "no unnecessary emphasis was placed on the name of [Mr. Kelso] at trial beyond what was necessary to prove the conspiracy." Trial counsel testified that he discussed his concern about the petitioner's connection to Mr. Kelso with the prosecutor who agreed to omit at trial any reference to Mr. Kelso's murder charge. Trial counsel also testified that he believed there was no legal basis on which to request a change of venue. The petitioner presented no proof that any juror was aware of Mr. Kelso's murder charge other than his testimony that Mr. Kelso's name had been in the newspaper. Therefore, even if trial counsel performed deficiently in this matter, the petitioner has failed to show that he was prejudiced by counsel's conduct.

Finally, the petitioner asserts that counsel failed to adequately argue the issue of sufficiency on direct appeal. As the post-conviction court found, sufficiency of the evidence was the only issue raised on direct appeal. The petitioner seems to suggest that counsel should have argued on appeal that Ms. Rutledge was not a credible witness and that her testimony, therefore, was insufficient to support the conviction; however, issues of witness credibility are resolved by the trier of fact. *See State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Consequently, the petitioner has failed to show that counsel performed deficiently by failing to raise credibility issues on direct appeal.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE