IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 3, 2023 Session

## STATE OF TENNESSEE v. AMBREIA WASHINGTON

**Appeal from the Circuit Court for Madison County**
**No. 22-187          Roy B. Morgan, Jr., Judge**

_____

### No. W2022-01201-CCA-R3-CD

_____

The Defendant, Ambreia Washington, was convicted by a Madison County Circuit Court jury of unlawful possession of a weapon by a convicted felon, a Class B felony; resisting arrest, a Class B misdemeanor; and driving with a canceled, suspended or revoked license (second offense), a Class A misdemeanor, for which he received an effective fifteen-year sentence. *See* T.C.A. §§ 39-17-1307 (2018) (subsequently amended) (unlawful possession of weapon), 39-16-602 (2018) (resisting arrest), 55-50-504 (2020) (canceled, suspended or revoked license). On appeal, the Defendant contends that the trial court erred in denying his motion to suppress, failing to dismiss the indictment due to missing evidence, admitting certain photographs into evidence at trial, and denying a motion for a mistrial as a result of prosecutorial misconduct. The Defendant also contends that the cumulative nature of the errors warrant relief. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and J. ROSS DYER, J., joined.

Jeremy Epperson, District Public Defender; Brian D. Wilson and Brennan M. Wingerter (on appeal), Assistant Public Defenders-Appellate Division; and Parker O. Dixon (at trial), Assistant Public Defender, for the Appellant, Ambreia Washington.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; Brad Champine, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

The Defendant's convictions relate to a police officer's encounter with the Defendant when the officer responded to an automobile accident call and found the Defendant in a car with a handgun. When the officer noticed the handgun in the front passenger seat of the car, he asked the Defendant to step out of the car. Once the Defendant was outside the car, he answered affirmatively when asked if he were a convicted felon. When the officer tried to handcuff the Defendant, the Defendant broke free and ran toward the passenger side of the car where the handgun was located. The officer used his taser on the Defendant and then placed the Defendant into custody without giving a *Miranda* warning. The Defendant filed a motion to suppress both his statement and the handgun seizure.

The Defendant was first indicted by the Madison County Grand Jury in Case No. 21-593. A copy of the indictment is not in the record. On February 28, 2022, the Grand Jury issued a superseding indictment as Case No. 22-187, and on April 7, 2022, Case No. 21-593 was dismissed and all of its previous filings were transferred to Case No. 22-187.

The trial court held a February 7, 2022 hearing on the Defendant's motion to suppress. At the suppression hearing, Jackson Police Officer Joshua Keller testified that on November 6, 2020, at 3:20 a.m., he was dispatched to an "auto accident" and was advised that a car was "on the wrong side of the road and was off the roadway and struck a mailbox." When he arrived, he parked his patrol car along the street facing the Defendant's car but did not turn on his emergency lights. Officer Keller said the Defendant's car's engine was still running, and it appeared the car had run off the road and into a yard, where it hit a mailbox. Officer Keller stated that he approached the driver's side of the car, shined his flashlight toward the driver, and saw the Defendant, who "appeared to be waking up." Officer Keller said that as he reached the car's passenger door, the Defendant began getting out of the car. Officer Keller asked the Defendant to stay in the car until Officer Keller noticed a handgun lying on the front passenger seat. Officer Keller said that he then told the Defendant to get out of the car. Officer Keller stated that as the Defendant was getting out, Officer Keller asked the Defendant if he were a convicted felon, and the Defendant replied that he was. At that point, Officer Keller stated that he intended to detain the Defendant.

Officer Keller testified that the Defendant attempted to flee, that Officer Keller used his taser to stop the Defendant, and that Officer Keller took the Defendant into custody and checked the Defendant's criminal history. He charged the Defendant with being a felon in possession of a firearm, driving on a revoked license, and resisting arrest. Officer Keller also seized the handgun.

-2-

On cross-examination, Officer Keller testified that he activated his body camera during the incident but that he was unable to locate the video for the hearing. Officer Keller said that body camera recordings must be properly classified in order to be electronically retained. Officer Keller stated that because he did not turn on his patrol car's emergency lights, the dash camera was not activated. Officer Keller said that the Defendant was not free to leave because Officer Keller was investigating the car accident. Officer Keller said that he completed a report regarding damage to the mailbox in the event the homeowner wanted to file a property damage claim. Officer Keller estimated that it took two minutes from the time he arrived until he used his taser on the Defendant. He also confirmed that he was the only officer at the scene.

The trial court credited Officer Keller's testimony and found that he had a public safety responsibility and a duty to investigate because the car was parked in the road, on the wrong side of the road, at 3:20 in the morning, and it appeared to have hit a mailbox. The trial court concluded that Officer Keller had a duty to investigate pursuant to the community caretaking doctrine, granted the Defendant's motion to suppress the statement that he was a convicted felon, but denied the motion to suppress the handgun because the handgun was in plain view.

On February 28, 2022, the Monroe County Grand Jury returned the superseding indictment charging the Defendant with four counts of unlawfully possessing a firearm, one count of resisting arrest, and two counts of driving on a canceled, suspended or revoked license.

The Defendant filed a motion to dismiss, or in the alternative, a motion for a jury instruction regarding Officer Keller's lost or destroyed body camera recording. *See State v. Ferguson,* 2 S.W.3d 912 (Tenn. 1999). The Defendant contended that the missing recording was exculpatory and necessary for a fair trial because it would show the location of the handgun when Officer Keller first approached the car. The State countered that the recording would not have been exculpatory or necessary for a fair trial. The State noted that Officer Keller had copied a portion of the recording on his cell phone and that the cell phone recording was consistent with Officer Keller's testimony and other evidence.

On May 9, 2022, the trial court held a hearing on the motion. At the hearing, Officer Keller testified that he activated his body camera at the scene but was unable to locate the recording in the Jackson Police Department computer system. Officer Keller said that he typically used his cell phone to copy body camera recordings in cases in which a defendant resisted arrest or in which Officer Keller used his taser. The court received the cell phone recording as an exhibit, and it was played for the court. Officer Keller agreed that the recording did not contain his initial encounter with the Defendant.

On cross-examination, Officer Keller testified that he made the cell phone recording the evening after he arrested the Defendant. Officer Keller stated that he did everything he normally would do to preserve the body camera recording and does not know what happened to it. Officer Keller identified the mailbox that he believed had been damaged by the Defendant's car. Officer Keller also noted that the cell phone recording depicted the Defendant's car facing the wrong direction along the street and parked partly in the road and partly in a yard. Officer Keller acknowledged that the recording was consistent with his prior testimony.

The twenty-three second cell phone recording begins with a close-up image of the Defendant's hands as Officer Keller is trying to handcuff the Defendant. The mailbox and orientation of the Defendant's car, consistent with Officer Keller's testimony, can be seen. The recording shows the Defendant running away from Officer Keller, and the officer using his taser on the Defendant.

The trial court credited Officer Keller's testimony and noted that a significant amount of the missing body camera recording was preserved on Officer Keller's cell phone. However, the court found that the missing recording was potentially exculpatory and granted Defendant's motion for a jury instruction regarding the State's duty to preserve evidence.

On the morning of the trial, the trial court held a hearing regarding eight accident-scene photographs taken by Officer Keller. The Defendant alleged the State violated discovery rules by making the photographs available only six days before trial, by not providing notice that the photographs were available, and by not producing the photographs at the preliminary hearing. The State responded that the photographs were discussed during the preliminary hearing, that they were referenced in Officer Keller's incident report, that the photographs were uploaded to the electronic discovery portal six days before the trial, that the discovery software automatically sent defense counsel a notice when discovery is posted to the portal, and that defense counsel only accessed the online discovery portal for the first time on the morning of the trial. The photographs included images of the car, the handgun on the passenger seat, and the mailbox. The court concluded that defense counsel could not be surprised by the photographs' existence and that the photographs were made available to defense counsel six days before the trial. The court provided defense counsel additional time to examine the photographs before the trial began.

At the trial, Officer Keller testified consistent with his testimony at the suppression hearing regarding his initial encounter with the Defendant. Officer Keller stated that his primary concern upon his arrival was "the welfare of the individual that was inside the vehicle." Officer Keller said that when he reached the driver's side window, the Defendant began waking up and started to get out of the car. Officer Keller

said that as the Defendant began getting up, Officer Keller noticed a handgun on the front passenger seat, and he told the Defendant to "go ahead and step out." Officer Keller said that it was safer to position the Defendant away from the handgun. Officer Keller also learned during this time that the Defendant was a convicted felon.

Officer Keller testified that while trying to handcuff the Defendant, the Defendant began to break free and Officer Keller warned the Defendant that he would deploy his taser if the Defendant ran. Officer Keller said that the Defendant began running around the front of the car toward the passenger side, that Officer Keller briefly chased the Defendant, that Officer Keller used his taser on the Defendant, and that Officer Keller placed the Defendant into custody. Officer Keller stated that he conducted a criminal history check, confirmed that the Defendant was a convicted felon, and secured the handgun.

The Defendant's prior convictions, driver's history, and eight photographs of the Defendant's car were received as exhibits. The Defendant renewed his objection to the photographs and moved for a mistrial. The court overruled the objection finding that "[t]here's been no specifics as to the claim of defense about prejudice other than he just didn't get them in a timely fashion."

Officer Keller explained that the photographs detailed damage to the mailbox and the car and showed the handgun and a toboggan lying on the front passenger seat of the car. One photograph depicted the handgun with the magazine removed, illustrating that it had been loaded. Officer Keller stated that he collected the handgun and its ammunition as evidence. The handgun and ammunition were received as exhibits.

On cross-examination, Officer Keller testified that he knew the Defendant was intoxicated, that there was no evidence of a passenger in the car, and that he initially approached the car to make sure the driver was okay.

Officer Keller testified that he activated his body camera, classified the incident, and ended the recording. He stated that once classified, a recording went into evidence as an electronic file so that officers could view it but not edit it. Officer Keller confirmed that his body camera recording could not be found in the police database. He stated that he recorded a portion of the body camera footage on his cell phone so that he could review the events surrounding the use of his taser. The recording made with Officer Keller's cell phone of the portion of the body camera video was received as an exhibit.

On redirect examination, Officer Keller testified that the photograph depicting the handgun lying on the passenger seat on top of a toboggan showed the way he found the handgun and that he did not touch the handgun before taking the photograph.

During the State's closing argument, the prosecutor said the following:

> Mr. Washington wants you to believe that this officer lied, perjured himself under oath. Those are the only two things that are possible; either he's guilty as charged, that he possessed the firearm, or as defense counsel seems to insinuate, he lied, pulled the gun out of the console and then placed it in the seat to plant evidence . . . .

> To some extent Mr. Dickson is doing what he's got to do as a defense attorney. He's going to argue the case that he's got for his client, but the manner in which he does it is offensive, to suggest that officer Keller –

Defense counsel immediately objected and moved for a mistrial, alleging that the prosecutor directly attacked defense counsel. The trial court admonished the prosecutor but denied the motion, noting that the jury was properly instructed on how to decide the case and that no grounds existed for a mistrial. The jury convicted the Defendant as charged. The Defendant filed a motion for new trial which was denied by the trial court. This appeal followed.

The Defendant contends that the trial court erred by (1) denying his motion to suppress the handgun, (2) failing to dismiss the indictment due to Officer Keller's missing body camera recording, (3) admitting eight crime scene photographs, (4) denying a motion for a mistrial due to alleged prosecutorial misconduct during closing argument, and (5) failing to grant relief based upon the cumulative effect of the errors. The State responds that the court properly denied the motion to suppress, that the court acted within its discretion by giving a curative jury instruction regarding the missing body camera recording, that the Defendant waived his claim regarding suppression of the crime scene photographs, that the court acted within its discretion by giving a curative instruction instead of declaring a mistrial as a result of the State's remarks during closing arguments, and that the Defendant is not entitled to cumulative error relief. In reply, the Defendant asserts that his claim as to the photographs is not waived because he challenged their admission at the motion for new trial.

# I

## Motion to Suppress Handgun

The Defendant contends that trial court erred in denying his motion to suppress the handgun. He argues that the handgun could not be seized under the plain view doctrine because the illegality of the weapon was not immediately apparent and that the scope of

the community caretaking exception did not extend to Officer Keller's investigation of the Defendant's felony status. The Defendant concedes, though, that Officer Keller's investigation into a car accident may initially have been a community caretaking function. The State counters that the Defendant voluntarily got out of his car, that it was reasonable for Officer Keller to allow the Defendant to get out of the car because Officer Keller was concerned for his safety after seeing a handgun on the passenger seat, and that Officer Keller was justified in seizing the handgun pursuant to the plain view doctrine.

A trial court's findings of fact on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *State v. Jones*, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. The prevailing party is entitled to the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998); *see State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). A trial court's application of the law to its factual findings is a question of law and is reviewed de novo on appeal. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals from unreasonable searches and seizures. *See* U.S. Const. amend. IV; Tenn. Const. art. 1, § 7. Warrantless seizures are "presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the . . . seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *Yeargan*, 958 S.W.2d at 629; *see Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971); *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). Three levels of police-citizen interactions exist: (1) a full-scale arrest, which requires probable cause, (2) a brief investigatory detention, which requires reasonable suspicion of wrongdoing, and (3) a brief police-citizen encounter, which does not require objective justification. *State v. Day*, 263 S.W.3d 891, 901 (Tenn. 2008). Only the first two categories constitute a "seizure" for purposes of the Constitution. *Id.*

Within the context of warrantless searches and seizures, the courts have recognized certain exceptions to the warrant requirement. *See, e.g.*, *State v. Meeks*, 262 S.W.3d 710, 722 (Tenn. 2008) (listing some of the commonly recognized exceptions to the warrant requirement). The State has the burden to demonstrate that a warrantless search falls within an exception to the warrant requirement. *Id.*

One exception to the warrant requirement is pursuant to the community caretaking doctrine, whereby police officers may, separate from any duties related to the detection or investigation of criminal activity or collection of evidence related to criminal activity,

engage in activities that are in furtherance of the general safety and welfare of citizens who may be in peril or otherwise in need of assistance. *State v. McCormick*, 494 S.W.3d 673, 680-83 (Tenn. 2016); *see Cady v. Dombrowski*, 413 U.S. 433 (1973). Thereby, a warrantless seizure is justified if the State establishes the following:

> (1) the officer possessed specific and articulable facts which, viewed objectively and in the totality of the circumstances, reasonably warranted a conclusion that a community caretaking action was needed, such as the possibility of a person in need of assistance or the existence of a potential threat to public safety; and (2) the officer's behavior and the scope of the intrusion were reasonably restrained and tailored to the community caretaking need.

*McCormick*, 494 S.W.3d at 687 (quoting *State v. Moats*, 403 S.W.3d 170, 195 (2013) (Clark and Koch, JJ., dissenting), *overruled by McCormick*, 494 S.W.3d at 684).

> "Determining whether police action is objectively reasonable in light of the circumstances requires careful consideration of the facts of each case[,]' including 'the nature and level of distress exhibited by the citizen, the location, the time of day, the accessibility and availability of assistance other than the officer, and the risk of danger if the officer provides no assistance."

*Id.* (quoting *Moats*, 403 S.W.3d at 195-96 (Clark and Koch, JJ., dissenting)).

The community caretaking responsibility allows for warrantless seizures where facts indicate a concern for an individual or a potential threat to public safety. The record reflects that Officer Keller was dispatched at approximately 3:00 a.m., after which he found the Defendant apparently asleep in a car, the keys in the car's ignition, the car on the wrong side of the road, the car partially in the road and partially in a home's front yard, and the car's appearing to have hit a mailbox. Officer Keller testified that he believed the Defendant was intoxicated, and Officer Keller was concerned for the Defendant's well-being. Officer Keller also testified that he saw the handgun when the Defendant was getting out of the car. These specific, articulatable facts raise concerns regarding the Defendant's ability to drive safely away from the scene and questions regarding whether the Defendant posed a neighborhood safety concern. Officer Keller's decision to detain the Defendant while Officer Keller briefly investigated the situation was both reasonably restrained and tailored to the community caretaking need.

The Defendant contends that Officer Keller did not have reasonable suspicion to detain the Defendant after concluding his community caretaking responsibility. We disagree. Officer Keller had reasonable suspicion that the Defendant had been driving

-8-

while impaired, had caused property damage, and posed a potential threat to the public. *See Moats*, 403 S.W.3d at 178 ("When an officer has reasonable suspicion, supported by specific and articulable facts, to believe that a criminal offense has been or is about to be committed, a brief investigatory detention is permitted." (citations omitted)). The Defendant's attempt to flee the scene also provided reasonable suspicion of possible illegal activity and concern for the safety of the neighboring community. *See State v. Nicholson*, 188 S.W.3d 649, 661 (Tenn. 2006) (evasive behavior, such as headlong flight, may dictate that further investigation is warranted). Given the circumstances at the scene, Officer Keller was justified in conducting a brief investigatory detention.

The Defendant contends that the plain view doctrine does not apply to Officer Keller's seizure of the handgun because the incriminating nature of the handgun was not immediately apparent. "The plain view doctrine applies when (1) the items seized were in plain view; (2) the viewer had the right to be in the position to view the items; (3) the items seized were inadvertently discovered; and (4) the incriminating nature of the items was immediately apparent." *State v. Cothran*, 115 S.W.3d 513, 524–25 (Tenn. Crim. App. 2003) (citations omitted).

Although Officer Keller did not give a *Miranda* warning to the Defendant before asking if the Defendant was a convicted felon, Officer Keller already had reasonable suspicion to briefly detain and investigate the Defendant. Officer Keller testified that after taking the Defendant into custody, he conducted a criminal history search, which identified the Defendant as a convicted felon and as having a suspended driver's license. The independent source doctrine provides that even if the Defendant's statement about being a convicted felon was improperly obtained, evidence seized as a result of that statement can still be admissible if it was discovered through an independent source. *See Murray v. United States,* 487 U.S. 533, 537-39 (1988) (The independent doctrine, from which the inevitable discovery doctrine is extrapolated, applies to evidence initially obtained illegally but later obtained independently from "activities untainted by the initial illegality."); *State v. Randall Keith Smith,* No. W2009-02678-CCA-R3-CD, 2011 WL 6885348, at *6 (Tenn. Crim. App. Dec. 27, 2011) (The independent source doctrine "permits the state to utilize any evidence that would otherwise be suppressed pursuant to the exclusionary rule if that evidence is obtained through an independent, lawful search[.]"), *perm. app. denied* (Tenn. 2012). Once Officer Keller completed the criminal history check, the incriminating nature of the handgun, located in plain view on the passenger seat, became apparent, and Officer Keller could seize it pursuant to the plain view doctrine. The trial court did not err in denying the Defendant's motion to suppress the handgun. The Defendant is not entitled to relief on this basis.

## II

## Missing or Lost Body Camera Recording

The Defendant asserts that the trial court erred by not dismissing the indictment because Officer Keller's missing body camera recording "could have contained exculpatory and material evidence." According to the Defendant, the State was negligent in failing to preserve the recording, which he argues was particularly significant because it would have provided the clearest version of the proof essential to determining whether the Defendant intentionally or knowingly possessed the handgun. The State responds that the evidentiary value of the missing recording was relatively minor and that nothing in the record indicated egregious police misconduct warranted dismissal. We agree with the State.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution and article I, section 8 of the Tennessee Constitution afford every criminal defendant the right to a fair trial. *See Johnson v. State*, 38 S.W.3d 52, 55 (Tenn. 2001). As a result, the State has a constitutional duty to furnish a defendant with exculpatory evidence pertaining to his guilt or lack thereof or to the potential punishment faced by a defendant. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Our supreme court has held that the State has a duty to preserve discoverable evidence when the evidence

> might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*Ferguson*, 2 S.W.3d at 917 (quoting *California v. Trombetta*, 467 U.S. 479, 488-89 (1984)); *see* Tenn. R. Crim. P. 16 (discoverable evidence); *see also State v. Merriman*, 410 S.W.3d 779, 785 (Tenn. 2013). The court has said that the proper inquiry first requires determining whether the State had a duty to preserve the evidence. *Ferguson*, 2 S.W.3d at 917. The duty to preserve applies to "potentially exculpatory" evidence. *Merriman*, 410 S.W.3d at 793 (citing *Ferguson*, 2 S.W.3d at 917). If the State failed to fulfill the duty, three factors must be considered:

1. The degree of negligence involved;

2. The significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and

3. The sufficiency of the other evidence used at trial to support the

-10-

conviction.

*Id.* The court has said that in evaluating these factors:

> [T]he central objective is to protect the defendant's right to a fundamentally fair trial. If, after considering all the factors, the trial judge concludes that a trial without the missing evidence would not be fundamentally fair, then the trial court may dismiss the charges. Dismissal is, however, but one of the trial judge's options. The trial judge may craft such orders as may be appropriate to protect the defendant's fair trial rights. As an example, the trial judge may determine, under the facts and circumstances of the case, that the defendant's rights would best be protected by a jury instruction.

*Ferguson*, 2 S.W.3d at 917; *see Merriman*, 410 S.W.3d at 797 (reviewing a trial court's remedy for a *Ferguson* violation for abuse of discretion). A trial court's application of the *Ferguson* factors involves a constitutional issue, and our supreme court has concluded that the proper standard of review on appeal is de novo. *Merriman*, 410 S.W.3d at 791.

The State has a duty to preserve evidence that possesses an exculpatory value and is of such a nature that the Defendant would be unable to obtain comparable evidence by other reasonably available means. *Merriman*, 410 S.W.3d at 785. Officer Keller testified that he engaged his body camera recorder as he approached the Defendant's car. Thus, the recording would have depicted the scene as Officer Keller first observed it, including the Defendant's demeanor. Because Officer Keller concluded in his report that the Defendant was intoxicated, video evidence of the Defendant's demeanor at the scene was relevant to show whether the Defendant was asleep, alert, under the influence of alcohol, or otherwise posed a danger to himself or others. Accordingly, the body camera recording was potentially exculpatory, and the State had a duty to preserve it.

We must also consider the significance of the destroyed evidence in light of its probative value and the reliability of secondary or substitute evidence that remains available and the sufficiency of the other evidence used at trial to support the conviction. *Id*. Officer Keller testified that he properly classified the body camera recording and that, once classified, the recording should have been saved to a police database where it would be preserved for trial and where officers could not delete or edit it. While neither Officer Keller nor any other witness provided an explanation as to why the recording was not preserved, there is no evidence that the recording was deliberately deleted or otherwise lost in bad faith. It appears that the loss of the recording was through negligence. However, law enforcement has a responsibility to maintain and operate its equipment so that body camera video evidence is properly collected and preserved and that officers are properly trained to operate cameras and to ensure that video collected is securely stored.

-11-

Regarding the reliability of substitute evidence, a portion of the body camera recording was preserved on Officer Keller's cell phone and was made available to the Defendant. Although it is curious that Officer Keller found it necessary to copy a part of the recording even though he testified that he saved the recording to the police database where it could be accessed by law enforcement, the cell phone recording corroborated the circumstances at the scene described by Officer Keller and the recording was played for the jury at the trial. The recording is approximately twenty-three seconds in length, it begins with Officer Keller attempting to handcuff the Defendant, and it ends after Officer Keller used his taser. Officer Keller testified that he believed it was approximately two minutes from the time he arrived at the scene until he used his taser. The trial court credited Officer Keller's testimony. Given that time frame, the missing body camera recording would have been approximately one and a half minutes in length. The portion of the recording preserved on the cell phone showed the location of the car partially in the road and partially in a yard, and it showed a mailbox immediately beside the car that appeared to have been hit by the car. The recording also showed the Defendant breaking away from Officer Keller and running around the front of the car toward its passenger side.

Regarding the sufficiency of other trial evidence to support the convictions, the record reflects that the portion of the body camera recording that was preserved showed the Defendant attempting to flee when Officer Keller was trying to detain him, and it showed the Defendant's car parked partially in a yard, on the wrong side of the road, and appearing to have hit a mailbox. When Officer Keller first approached the Defendant, Officer Keller saw a handgun on the front passenger seat, which was in plain view. Because the circumstances indicated the possibility of a car accident and a potential safety concern, Officer Keller had the necessary reasonable suspicion to detain the Defendant and investigate, which he did by asking the Defendant to step out of the car, by attempting to restrain the Defendant, and by conducting a criminal history and driver's license check at the scene. As a result, Officer Keller learned that the Defendant had a suspended driver's license and was a convicted felon. The facts at trial were more than sufficient to support the convictions for resisting arrest, possession of a firearm by a convicted felon, and driving with a canceled, suspended or revoked license.

We agree with the trial court that a curative jury instruction regarding missing or lost evidence was sufficient to protect the Defendant's right to a fundamentally fair trial. *See State v. Steven Shawn Bowen*, No. E2022-00691-CCA-R3-CD, 2023 WL 2945045, at *6-8 (Tenn. Crim. App. Apr. 14, 2023) (missing body camera recording of field sobriety tests was potentially exculpatory, but the curative *Ferguson* jury instruction was sufficient to assure a fundamentally fair trial); *Ricardo Antonio Demling v. State*, No. M2019-01822-CCA-R3-CD, 2021 WL 3399862, at *11 (Tenn. Crim. App. Aug. 4, 2021) (dismissal of charges for lost or destroyed evidence is reserved for the most egregious of situations, particularly those involving gross negligence or intentional acts), *perm. app.*

*denied* (Tenn. Dec. 8, 2021). The Defendant is not entitled to relief on this issue.

## III

## Discovery Violation

The Defendant contends that the State's delay in disclosing eight crime scene photographs constituted a discovery violation and warranted a new trial. The Defendant argues that the photograph of the handgun on the passenger seat prejudiced his ability to present a defense theory that Officer Keller placed the handgun on the passenger seat. The State counters that the Defendant has waived this claim for failure to raise it in his motion for new trial. Alternatively, the State asserts that the Defendant has failed to establish actual prejudice from the delayed disclosure of the photographs. In reply, the Defendant asserts he raised this issue in his motion for new trial, and it is not waived.

In his motion for new trial, the Defendant alleged that his due process and statutory rights were violated by the State's withholding discovery information, including Officer Keller's crime scene photographs, until less than a week before trial. We conclude that the Defendant has not waived this issue. *See* T.R.A.P. 3(e).

Tennessee Criminal Procedure Rule 16 addresses the parties' rights and obligations during the discovery process. Rule 16(a)(1)(F) provides that

> Upon a defendant's request, the state shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings, or places, or copies or portions thereof, if the item is within the state's possession, custody, or control and:
>
> (i)     the item is material to preparing the defense;
>
> (ii)    the government intends to use the item in its case-in-chief at trial; or
>
> (iii)   the item was obtained from or belongs to the defendant.

"A trial court has wide discretion in fashioning a remedy for non-compliance with a discovery order, and the sanction should fit the circumstances of the case." *State v. Downey*, 259 S.W.3d 723, 737 (Tenn. 2008); *see* Tenn. R. Crim. P. 16(d)(2).

The record reflects that Officer Keller took photographs at the crime scene, including a photograph of the position of the Defendant's car, the mailbox, an open container of beer in the car's center console, the handgun on the front passenger seat, and

-13-

a magazine with ammunition, which had been removed from the handgun. These photographs were contained in the police files relating to this case. The State posted those photographs on the discovery database six days before trial. Defense counsel indicated that he never received notice that the photographs had been posted, but he also said that he had not checked the database until the morning of the trial. Prior to beginning the trial, the trial court gave defense counsel additional time to review the photographs. The court noted after its review, "I've carefully looked at those. You see what they are, mailbox, car and gun. Everything's been discussed about it."

We begin by noting that the photographs were consistent with Officer Keller's testimony at the preliminary hearing, the suppression hearing, and the motion to dismiss hearing, and they were consistent with Officer Keller's previously disclosed cell phone recording. The photographs were stored in the Jackson Police Department property and evidence room and were referenced in Officer Keller's incident report. The trial court also found that the photographs were consistent with earlier testimony, that they had been subject to discovery all along, and that they were never claimed to have been missing.

The district attorney asserted that the database was supposed to provide notice to defense counsel when discovery is uploaded. Defense counsel stated that he did not recall receiving an automated notice that the photographs had been uploaded but that he did not check for any newly uploaded discovery until the morning of the trial. In any event, the trial court allowed defense counsel additional time before beginning the trial to examine the photographs. The record does not reflect the Defendant was prejudiced by the introduction of the photographs. The trial court did not abuse its discretion by allowing the State to introduce the photographs as exhibits after giving defense counsel additional time to review them. The Defendant is not entitled to relief on this basis.

## IV

### Prosecutorial Misconduct

The Defendant contends prosecutorial misconduct occurred during closing argument when the prosecutor said defense counsel's conduct was "offensive." The Defendant argues that the trial court erred in denying a mistrial. The State counters that the court did not err because the Defendant failed to demonstrate a manifest necessity for a mistrial. We agree with the State.

A trial judge should declare a mistrial if manifest necessity arises. *Arnold v. State*, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977). Manifest necessity occurs when "no feasible alternative to halting the proceedings" exists. *State v. Knight*, 616 S.W.2d 593, 596 (Tenn. 1981). "The granting or denial of a mistrial is within the sound discretion of the trial court." *State v. McKinney*, 929 S.W.2d 404, 405 (Tenn. Crim. App. 1996); *see*

-14-

*State v. Jones*, 802 S.W.2d 221, 222 (Tenn. Crim. App. 1990). This court will only disturb that decision if the trial court abused its discretion. *State v. Adkins*, 786 S.W.2d 642, 644 (Tenn. 1990).

Although an exhaustive list of the bounds of prosecutorial impropriety cannot be defined, five general areas of prosecutorial misconduct have been recognized:

1. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

2. It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant. *See State v. Thornton*, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999); *Lackey v. State*, 578 S.W.2d 101, 107 (Tenn. Crim. App. 1978); Tenn. Code of Prof'l Responsibility DR 7–106(c)(4).

3. The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury. *See Cauthern*, 967 S.W.2d at 737; *State v. Stephenson*, 878 S.W.2d 530, 541 (Tenn. 1994).

4. The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict. *See Cauthern*, 967 S.W.2d at 737; *State v. Keen*, 926 S.W.2d 727, 736 (Tenn. 1994).

5. It is unprofessional conduct for a prosecutor to intentionally refer to or argue facts outside the record unless the facts are matters of common public knowledge.

STANDARDS RELATING TO THE PROSECUTION FUNCTION AND THE DEFENSE FUNCTION §§ 5.8–5.9 Commentary (ABA Project on Standards for Criminal Justice, Approved Draft 1971).

*State v. Goltz*, 111 S.W.3d 1, 6 (Tenn. 2003)

If improper argument occurs, a new trial is required only if the argument affected the outcome of the trial to a defendant's prejudice. *State v. Bane*, 57 S.W.3d 411, 425 (Tenn. 2001). In determining whether prosecutorial misconduct affected the jury verdict to prejudice a defendant, this court has stated that it should consider the conduct in light and in context of the facts and circumstances of the case, any curative measures taken by

the trial court and the prosecutor, the prosecutor's intent in making the comment, the cumulative effect of the improper comment and any additional errors, the strength or weakness of the case, whether the prosecutor's comments were lengthy and repeated or isolated, and whether the comments were in response to defense counsel's closing argument. *Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976); *see Goltz*, 111 S.W.3d at 5-6.

During the State's rebuttal closing argument, the following exchange took place:

[PROSECUTOR]: To some extent [defense counsel] is doing what he's got to do as a defense attorney. He's going to argue the case that he's got for his client, but the manner in which he does it is offensive, to suggest that Officer Keller—.

[DEFENSE COUNSEL]: Your Honor, may we approach?

[THE COURT]: Certainly.

[DEFENSE COUNSEL]: I'm going to move for a mistrial and object to the State's characterization of defense counsel in a negative light, in making offensive and lying commentary. I think it's totally inappropriate and grounds for a mistrial. The State is directly attacking defense counsel.

[THE COURT]: General?

[PROSECUTOR]: He directly accused the officer of lying under oath,

[DEFENSE COUNSEL]: I have not.

[PROSECUTOR]: -- planting the evidence, saying, "You turned off your camera to avoid showing that you pulled this gun out of the center console." That's an accusation of this sworn law enforcement lying under oath.

[DEFENSE COUNSEL]: I did –

[COURT]: Hold on. It's still inappropriate to attack counsel like that. You can speak to what they claim their defense is. You can speak to what the officer's testimony was, all the evidence in this case, but there

-16-

should be no personal attack against the counsel in this case. That is inappropriate. It's not proper conduct.

It's not grounds for a mistrial. The jury is properly instructed on how to decide this case based upon the evidence and the law.

So, General, just argue what the evidence is, but, never, never attack each other as far as personal accusations. Go ahead.

We agree with the trial court that personal character attacks on opposing counsel are not proper for closing statements. The court properly admonished the prosecutor for the statements.

The record reflects that before beginning closing arguments, the court instructed the jury that statements of counsel are not evidence in the case. *See State v. Reid*, 164 S.W.3d 286, 323 (Tenn. 2005) (citing *State v. Shaw,* 37 S.W.3d 900, 904 (Tenn. 2001) (the jury is presumed to follow the court's instructions)). Defense counsel immediately objected to the statement at issue, and the court held a bench conference during which the court admonished the prosecutor. The court found that the jury was instructed on how to consider statements of counsel and found that a mistrial was not warranted. Considering that the statement was brief in nature, that the court instructed the jury not to consider statements of counsel as evidence, that the State's case against the Defendant was strong, and that the Defendant did not identify any additional errors in closing argument, we conclude that the trial court did not abuse its discretion by denying a mistrial. The Defendant is not entitled to relief on this basis.

V

**Cumulative Error Doctrine**

The Defendant argues that relief is appropriate under the "cumulative error doctrine." The State counters that the Defendant failed to show multiple instances of trial court error sufficient to warrant reversal under the cumulative error doctrine. We agree with the State.

In the context of a trial, the cumulative error doctrine requires relief when "multiple errors [are] committed in the trial proceedings, each of which in isolation constitutes mere harmless error, but which when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." *State v. Hester*, 324 S.W.3d 1, 76-77 (Tenn. 2010) (internal citations omitted); *see State v. Jordan*, 325 S.W.3d 1, 79 (Tenn. 2010) ("'[T]he combination of multiple

errors may necessitate . . . reversal . . . even if individual errors do not require relief.'") (quoting *State v. Cribbs*, 967 S.W.2d 773, 789 (Tenn. 1998)).

The Defendant has failed to establish multiple errors upon which cumulative error relief might be based. The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE