IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 14, 2025

## JAQUARIOUS D. CARPENTER v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-22-246          Joseph T. Howell, Judge**

———————————————————

**No. W2024-00801-CCA-R3-PC**

———————————————————

The petitioner, Jaquarious D. Carpenter, appeals the denial of his petition for post-conviction relief, arguing the post-conviction court erred in finding he received the effective assistance of counsel. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR. and MATTHEW J. WILSON, JJ., joined.

Samuel W. Hinson, Lexington, Tennessee, for the appellant, Jaquarius D. Carpenter.

Jonathan Skrmetti, Attorney General and Reporter; Johnny Cerisano, Assistant Attorney General; Jody Pickens, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

A Madison County jury convicted the petitioner of possession with intent to sell 0.5 grams or more of cocaine, possession with intent to deliver 0.5 grams or more of cocaine, possession of marijuana, and possession of drug paraphernalia. The trial court imposed an effective sentence of eighteen years as a Range II offender in the Department of Correction. The petitioner appealed, challenging the sufficiency of the convicting evidence. *State v. Carpenter*, 2021 WL 4771955, at *1 (Tenn. Crim. App. Oct. 13, 2021), *perm. app. denied* (Tenn. Jan. 13, 2022). This Court affirmed the judgments of the trial court, and the

Tennessee Supreme Court denied the petitioner's application for permission to appeal. *Id.* This Court summarized the underlying facts of the case on direct appeal as follows:

> This case arose when [the petitioner] began selling drugs out of David Anthony Brown's apartment ("the apartment") located at 139A Railroad Street in Jackson, Madison County. The authorities developed [the petitioner] as a person of interest and conducted stationary surveillance on the apartment. On March 28, 2018, authorities executed a search warrant of the apartment and arrested [the petitioner], along with Courtney Harvey, David Anthony Brown, and Willie D. Brown, no relation. From the bathroom, officers retrieved a bag of cocaine weighing 21.75 grams and a loaded handgun found in the toilet tank. Officers also retrieved a bag of marijuana weighing 2.75 grams found on the living room floor.

*Id.*

On October 11, 2022, the petitioner filed a timely pro se petition for post-conviction relief in which he argued, relevant here, that trial counsel was ineffective and his conviction "was based on use of evidence gained pursuant to an unconstitutional search and seizure." The petitioner was appointed counsel, and the State filed a response to the pro se petition. The matter was set for a hearing on December 5, 2022, but it does not appear that a hearing took place on that date because the court relieved the petitioner's original post-conviction counsel and appointed new counsel on December 7, 2022. No amended petition was filed, and the post-conviction court conducted an evidentiary hearing on May 13, 2024.

At the hearing, the petitioner's trial counsel testified that he was appointed to represent the petitioner on drug charges in the underlying case. Counsel visited the petitioner at the jail where he was incarcerated and went over the discovery with him. As to the discovery, counsel said he "got everything [the State] had." Counsel recalled the circumstances surrounding the petitioner's arrest, stating:

> There was an officer named Kelly who started picking on [the petitioner]. I really never understood why, but that was how I approached it. He was sort of picking on him. He called him China Man. And they were picking on him at somebody else's residence, and I believe Mr. Kelly had been out there for a couple of days with surveillance, and there was a statement made or a picture taken where it showed [the petitioner] going into this house, and it showed, like, the back of him going into the house.

An investigation went on and on, a search warrant was got, and eventually Metro Narcotics got involved and searched the house and arrested four individuals, if I'm not mistaken.

When asked if an issue of attacking the search warrant ever came up, counsel initially could not recall but then reflected that "we probably did discuss it." Counsel agreed that the petitioner's name was on the search warrant but the home the officers searched was not the petitioner's home and, because of that, counsel believed the petitioner lacked standing to challenge the search warrant. Counsel admitted that he probably wrote the words, "There's no standing here," on his copy of the warrant, which he gave to the petitioner. Counsel acknowledged that he did not file a motion to suppress and believed that none of the other defendants filed a motion to suppress or otherwise attacked the search warrant. Counsel confirmed that he sent a letter to the petitioner explaining his belief that the petitioner lacked standing to challenge the search warrant but that he "may have been wrong."

Counsel said that the petitioner expressed a desire to go to trial, and the prosecutor handling the case had indicated that "he did not have much leeway to discuss any beneficial offers to [the petitioner]." Thus, counsel and the petitioner had proceeded under the assumption they would be going to trial. Counsel could not remember whether the petitioner asked that he attempt to sever the petitioner's case from his co-defendants. Counsel also did not remember whether the petitioner requested that he attempt "to get a new judge," but counsel "didn't really see any reason" for such action.

On cross-examination, counsel reiterated that the home searched by law enforcement was David Brown's home, not the petitioner's, and law enforcement referred to it as a "trap house." Counsel explained that "[t]here w[ere] a lot of people going in and out of that house," but law enforcement "seemed to target [the petitioner]." Counsel's theory of the case was that law enforcement was "just wrong about it" and "just wanted to blame [the petitioner] for everything." Counsel noted that "everybody in [the trap house], including the guys that were with [the petitioner] as friends, . . . pointed their fingers at [the petitioner]." Counsel acknowledged that he had seen potential for a suppression issue but believed the petitioner lacked standing because "he did not live there." Counsel noted that all the items recovered were found in the home and not on the petitioner's person.

The petitioner testified that he was represented by another attorney in general sessions and that David Brown had testified for the State in general sessions. The petitioner asserted that Mr. Brown's testimony had been exculpatory and the case "was dismissed." However, the petitioner claimed that the State still presented the case to the grand jury, and he was indicted. Trial counsel was appointed to represent the petitioner in circuit court.

According to the petitioner, counsel only reviewed "[p]arts" of the discovery with him. One item the petitioner did not learn about until trial was a video statement David Brown gave to the police. The petitioner claimed that Mr. Brown's statement was inconsistent with his testimony in general sessions court. The petitioner also claimed that the State used Mr. Brown's video statement to impeach Mr. Brown's testimony at trial.

The petitioner stated that he discussed with counsel "[n]umerous of times" that he wanted to attack the search warrant, but counsel told the petitioner that he did not have standing to challenge it. However, the petitioner emphasized that counsel changed his mind after trial and sent the petitioner a letter informing him of his change in opinion. The petitioner admitted that he did not live at the house that was the subject of the search warrant, but David Brown did live at that house. The petitioner was unsure why his name was listed on the search warrant but believed that the presence of his name gave him standing to challenge the search. The petitioner affirmed that "everything" that was found in the house was used against him at trial and resulted in his conviction.

The petitioner acknowledged that counsel fought against the introduction of David Brown's video statement to police, elaborating "that's probably about the only part he just really fought on." The petitioner believed that the trial judge was "biased" against him and needed to be removed from the case because "he done sent me to prison twice. I done been in front of him multiple times. He signed the actual search warrant to the house." However, counsel did not raise the issue. The petitioner stated that he requested that counsel move to sever the petitioner's trial from his co-defendants because "[n]one of the evidence that they had pointed toward me." The petitioner said that he and counsel discussed the motion but never filed it.

On cross-examination, the petitioner acknowledged that if the search warrant was "good," then he could only contest his involvement in the crimes alleged in the warrant and not the warrant itself. However, the petitioner maintained that "when you broke it down to find the corroboration, the validity, any of that it wasn't there. . . . None of it . . . had anything to do with me[.]" The petitioner admitted that the home that was searched did not belong to him but believed he had standing to challenge the warrant because his name was on it.

The petitioner reiterated his statement that counsel never filed a motion to sever his case from his co-defendants. However, when the State presented the petitioner with a file-stamped motion to sever, the petitioner stated, "I never got this." The petitioner agreed that David Brown did not go to trial with the petitioner and other co-defendants because his case was resolved beforehand. The petitioner said that Mr. Brown testified against the petitioner at trial and "basically pointed the finger at everybody else but his self." The petitioner agreed that the jury heard the inconsistencies in Mr. Brown's trial testimony and

- 4 -

video statement to police. The petitioner said that he and his two co-defendants were all "found guilty."

On re-direct examination, the petitioner stated that there was never a hearing on the motion to sever.

After the close of the petitioner's proof, the State called trial counsel to testify again. Counsel testified that he did not recall a hearing taking place on the motion to sever that he had filed. Counsel noted that David Brown, one of the co-defendants, worked out an agreement prior to the trial, so he was in essence "severed." One of the other co-defendants, Courtney Harvey, testified at the trial, and counsel described his testimony as "just bad. It didn't . . . help anybody, including himself." Mr. Harvey's testimony did not implicate the petitioner, and no witness other than Mr. Brown accused the petitioner of possessing drugs.

Following the parties' arguments, the post-conviction court addressed the petitioner's ineffective assistance of counsel claims, which the court summarized as: failure to file a motion to suppress the search, failure to have a hearing on the motion to sever, and failure to seek recusal of the trial judge. Regarding suppression, the court recounted that the petitioner claimed counsel advised him that he did not have standing to contest the search but later sent him a letter suggesting "that maybe he was wrong." However, the court noted that counsel did not give any further detail in the letter or in his testimony at the hearing regarding the grounds to contest the search, so the petitioner's claim was "purely speculative." As such, the court determined that the petitioner had made no showing of "an error or omission" by counsel or "that it would have affected the outcome of the case." The court observed that the petitioner "concedes it was not his house, was not his drugs."

In addressing the petitioner's severance issue, the court found that a motion had been filed and that one of the witnesses was essentially "severed out." The court determined that "there's been no showing of any basis for further severance." Regarding recusal, the court accredited counsel's testimony that there was no basis to seek such action. The court concluded that there were no other issues presented that would warrant further relief and denied the petition for post-conviction relief.

The post-conviction court subsequently issued a written order denying the petition. Specifically, the court emphasized that "any issue regarding the search warrant and an unconstitutional search is purely speculative," and that the petitioner had "failed to establish by clear and convincing evidence that there is an issue or that he was prejudiced[.]" The petitioner appealed.

*Analysis*

On appeal, the petitioner argues he received ineffective assistance of counsel due to trial counsel's failure to challenge the search warrant by way of a motion to suppress, and that counsel's failure to review all discovery with him, namely a videotaped statement the State used to impeach David Brown, "effectively prevented him from making an intelligent and educated decision regarding whether he should proceed forward with trial or accept a plea." The State responds that the post-conviction court properly found that trial counsel was not deficient and the petitioner suffered no prejudice, and that the petitioner "waived his claim that his decision to proceed to trial was not knowingly and voluntarily made." We agree with the State.

The petitioner bears the burden of proving his post-conviction factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them. *Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). This Court will not reweigh or reevaluate evidence of purely factual issues. *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, appellate review of a trial court's application of the law to the facts is *de novo,* with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel presents mixed questions of fact and law. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Thus, this Court reviews the petitioner's post-conviction allegations *de novo,* affording a presumption of correctness only to the post-conviction court's findings of fact. *Id*.; *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceedings. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order for a post-conviction petitioner to succeed, both prongs of the *Strickland* test must be satisfied. *Id.* Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.*; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the *Strickland* test is satisfied when the petitioner shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

## I. Failure to File Motion to Suppress

The petitioner first argues that he received ineffective assistance of counsel due to trial counsel's failure to challenge the search warrant by way of a motion to suppress. At the evidentiary hearing, counsel testified that he had seen potential for a suppression issue but believed the petitioner lacked standing to challenge the search warrant because "he did not live there." Counsel admitted that he probably wrote the words, "There's no standing here," on his copy of the warrant, which he gave to the petitioner. Counsel acknowledged that he did not file a motion to suppress and believed that none of the other defendants filed a motion to suppress or otherwise attack the search warrant. The petitioner testified that he discussed with counsel "[n]umerous of times" that he wanted to attack the search warrant, but counsel told him that he did not have standing to challenge it. However, the petitioner emphasized that counsel changed his mind after trial and sent him a letter[1] saying that he could have been wrong. The petitioner was unsure why his name was listed on the search warrant but believed that the presence of his name gave him standing to challenge the search.

---

[1] Our review of the record does not reveal a letter sent to the petitioner by trial counsel. However, the record contains a copy of the search warrant, on the back of which is a handwritten note to the petitioner ostensibly by counsel. We assume this notation is the "letter" referred to by the petitioner.

In order to establish a successful claim of ineffective assistance of counsel based on counsel's failure to file a motion to suppress evidence, a petitioner "must prove: (1) a suppression motion would have been meritorious; (2) counsel's failure to file such motion was objectively unreasonable; and (3) but for counsel's objectively unreasonable omission, there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Phillips v. State*, 647 S.W.3d 389, 404 (Tenn. 2022). The petitioner continues to bear the burden of proving the factual allegations supporting his or her claims by clear and convincing evidence. *Id.* (citing Tenn. Code Ann. § 40-30-110(f)). In order to prevail, the petitioner should "[i]n essence . . . incorporate a motion to suppress within the proof presented at the post-conviction hearing." *Cecil v. State*, 2011 WL 4012436, at *8 (Tenn. Crim. App. Sept. 12, 2011).

"In order to challenge the reasonableness of a search or seizure, the defendant must have a legitimate expectation of privacy in the place or thing to be searched." *State v. Cothran*, 115 S.W.3d 513, 520-21 (Tenn. 2023). To evaluate this issue, we must determine "(1) whether the individual had an actual, subjective expectation of privacy and [if so] (2) whether society is willing to view the individual's subjective expectation of privacy as reasonable and justifiable under the circumstances." *State v. Munn*, 56 S.W.3d 486, 494 (Tenn. 2001). The second part of the inquiry focuses on whether "the individual's expectation, viewed objectively, is 'justifiable' under the circumstances." *Smith v. Maryland*, 442 U.S. 735, 740 (1979). Courts should consider these factors when determining whether a personal privacy interest exists: 1) ownership of the property; 2) whether the accused has a possessory interest in the item seized; 3) whether the accused has a possessory interest in the place searched; 4) whether the accused has a right to exclude others from that place; 5) whether the accused has demonstrated a subjective expectation that the place would remain free from governmental invasion; 6) whether the accused took normal precautions to maintain privacy; and 7) whether the accused was legitimately on the premises. *State v. Talley*, 307 S.W.3d 728, 731 (Tenn. 2010).

As to his claim that counsel rendered ineffective assistance by failing to file a motion to suppress, the post-conviction court found that "any issue regarding the search warrant and an unconstitutional search is purely speculative, and the [p]etitioner has failed to establish by clear and convincing evidence that there is an issue or that he was prejudiced." We observe that the petitioner did not incorporate a motion to suppress within the proof at the post-conviction hearing. The petitioner asked counsel a handful of questions about the suppression issue but introduced no proof suggesting the petitioner was an overnight guest, or otherwise had an objectively reasonable legitimate expectation of privacy in, David Brown's home. *See State v. Guy*, 679 S.W.3d 632, 671-72 (Tenn. Crim. App. 2023); *State v. Transou*, 928 S.W.2d 949, 958 (Tenn. Crim. App. 1996). Rather, the proof at trial indicates that the petitioner was using Mr. Brown's home as a "trap house" and had likely "intimidated" Mr. Brown in allowing use of his home. *See Carpenter*, 2021 WL 4771955,

at *4-*6. Moreover, even if the petitioner was an overnight guest in Mr. Brown's home, which the record suggests otherwise, "[c]ourts have rejected a defendant's claim of a legitimate expectation of privacy in a residence as an overnight guest when the defendant procured or maintained access to the residence through coercion or violent acts or threats." *Guy*, 679 S.W.3d at 674-75 (collecting cases). The petitioner has failed to show that he had standing to challenge the search and that a motion to suppress would have been meritorious. Accordingly, the petitioner is not entitled to post-conviction relief. *See Hall v. State*, 2023 WL 3815065, at *3 (Tenn. Crim. App. June 5, 2023) (noting the petitioner failed to incorporate a motion to suppress within the proof at the post-conviction hearing, which prevents him from showing that a suppression motion would have been meritorious); *Gutierrez v. State*, 2022 WL 2294897, at *8 (Tenn. Crim. App. June 27, 2022) (noting the petitioner failed to show by clear and convincing evidence that a suppression motion would have been meritorious where the petitioner failed to incorporate a hearing on the motion to suppress into the post-conviction evidentiary hearing).

## II. Failure to Review Discovery

The petitioner next argues that trial counsel's failure to review all discovery with him, specifically a videotaped statement the State used to impeach David Brown, "effectively prevented him from making an intelligent and educated decision regarding whether he should proceed forward with trial or accept a plea." To the extent the petitioner claims that he did not knowingly and intelligently decide to proceed to trial, such claim was not raised in the post-conviction court and will not be addressed for the first time in this Court. *Cauthern v. State*, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) ("[A]n issue raised for the first time on appeal is waived."). To the extent the petitioner claims that counsel rendered ineffective assistance by failing to review the video with him, the record does not support such claim.

The petitioner testified that the State used a videotaped statement that David Brown made to police at trial to impeach Mr. Brown's in-court testimony, and the petitioner had no knowledge of that statement until trial. However, counsel testified that he received discovery from the State and reviewed it with the petitioner. When asked about digital media or a recorded statement from David Brown, counsel stated, "I got everything [the State] had." We also observe that this Court specifically noted in its opinion on direct appeal that "[i]t was undisputed that all parties had received both statements [, an initial written statement and then an audio-recorded statement six days later,] in discovery." *Carpenter*, 2021 WL 4771955, at *4. Accrediting counsel's testimony, as did the post-conviction court explicitly and implicitly throughout its findings, the petitioner has failed to prove that counsel performed deficiently with respect to this issue. Moreover, the petitioner has failed to establish that he was prejudiced by the alleged deficiency. Counsel's testimony suggests that the State made a plea offer but that it was not very good,

and that the petitioner expressed a desire to go to trial and they proceeded under the assumption they would go to trial the entire time. In addition, in his brief the petitioner only states that he "might have changed his mind about going to trial in the first place," not that he would have accepted a dissatisfactory offer had he seen Mr. Brown's videotaped statement beforehand. *See Green v. State*, 2013 WL 3324989, at *6 (Tenn. Crim. App. June 26, 2013) ("The Petitioner's contention that he 'might not have' gone to trial does not constitute clear and convincing evidence that he would have pleaded guilty to the charges against him."). The petitioner is not entitled to relief.

### *Conclusion*

Based on the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

s/ J. ROSS DYER
J. ROSS DYER, JUDGE